**CONCORDIA COLLEGE CORPORATION OF MOORHEAD, MINNESOTA, et al., Appellants,**

v.

**The SALVATION ARMY, VERONA, NEW JERSEY, et al., Elmer D. Stemsrud, Milan C. Schmiesing, et al., Respondents.**

No. C7-90-2202.

Court of Appeals of Minnesota.

May 21, 1991.

Review Denied Aug. 2, 1991.

Michael R. Cunningham, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for appellants.

Sidney P. Abramson, Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondents The Salvation Army, The Grand Lodge of Minnesota A.F. & A.M., and Willmar Mason's for Diabetic Youth Fund–Sharon Lodge.

Joe A. Walters, O'Connor & Hannan, Minneapolis, for Elmer D. Stemsrud.

Dean H. Anderson, Anderson, Burgett, Spilseth & Hanson, Willmar, for respondents Milan C. Schmiesing, Lloyd Erickson and Harold L. Fenstra.

Considered and decided by NORTON, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

NORTON, Judge.

Appellants, Concordia College Corporation and other beneficiaries under George Engh's 1980 will, challenge the trial court judgment dismissing their claim that George Engh's execution of his 1985 will breached the 1980 agreement between George and Phyllis Engh not to change or revoke their 1980 wills.

## FACTS

George and Phyllis Engh married in 1921 and were lifetime residents of Kerkhoven, Minnesota and the surrounding area. Phyllis taught in the Kerkhoven school district. George was associated with the State Bank of Kerkhoven and eventually became president in 1953. George and Phyllis were often solicited by individuals and charitable organizations seeking monetary support.

On August 4, 1980, George met with his attorney to discuss the planning of his and Phyllis' wills. Phyllis was not present at this meeting. George also requested an agreement whereby he and his wife would agree not to revoke or change their wills. The attorney met only with George to review the will drafts.

On September 4, 1980, George met with his attorney, a Concordia College fundraiser, and Concordia College's attorney to discuss details of his estate plan, including a gift to Concordia College. Further drafts of his will were made with the assistance of Concordia College's attorney.

George and Phyllis executed their wills and the agreement not to change their wills on October 3, 1980. George's 1980 will provided for the creation of various trusts, with Phyllis to be the income beneficiary of the trusts if she survived him. George also gave Phyllis testamentary power of appointment. If Phyllis did not survive him, a portion of George's residuary estate was to be distributed to Concordia College, Hillside Cemetery of Kerkhoven, the City of Kerkhoven, and the Kerkhoven school district. The majority of his residuary estate was to be divided evenly among specified relatives of George and Phyllis.

Phyllis' 1980 will gave all her property to George if he survived her. If he did not survive, her property was to be distributed to specified relatives. Her will also provided that she would not exercise any testamentary power of appointment she may have at the time of her death.

At the time of the execution of the wills, Phyllis owned very little property of her own. She had received various monetary gifts from George and a minor inheritance. Their homestead was held in joint tenancy. George had considerable wealth held only in his name. Phyllis died in January of 1982 and her will was not probated.

Approximately one month after the execution of his will, George executed two codicils to his will. One year later, he executed a third codicil. George's attorney prepared these codicils at George's request.

After developing a dislike for Concordia College and one of its fundraisers, on January 23, 1983, George executed a second will drafted by a Minneapolis law firm. He revoked all of his charitable bequests to Concordia College.

On May 30, 1985, George executed a third will drafted by a Willmar attorney. George omitted gifts to relatives who were beneficiaries under the 1980 will. He told his accountant that lifetime gifts had been made to these individuals. George's 1985 will provided that one-half his estate go to the Salvation Army and the remaining half to the Grand Lodge of A.F. & A.M. Minnesota (Masons).

Approximately three weeks later, George executed his first codicil to the 1985 will dividing the bequest to the Grand Lodge between the Mason's for Diabetic Youth Fund–Sharon Lodge and the Grand Lodge

of Minnesota. On November 18, 1985, a final codicil to the 1985 will added specific bequests to seven individuals, including George's sister and a friend.

George died on February 2, 1988. George's 1985 will and codicils were admitted to probate without contest.

A breach of contract action was commenced by appellants on December 13, 1988, alleging that George's execution of his 1985 will breached the 1980 agreement between George and Phyllis not to change or revoke their 1980 wills. Appellants sought to impose a constructive trust for their benefit or damages for breach of contract. The trial court dismissed the claim with prejudice.

## ISSUES

1. Do appellants have standing as intended beneficiaries to enforce the 1980 agreement by which George and Phyllis Engh agreed not to change or revoke their wills?

2. Was the 1980 agreement supported by sufficient consideration?

3. Did George Engh breach the 1980 agreement not to revoke or change his will?

4. Is the 1980 agreement unenforceable as a matter of public policy?

## ANALYSIS

### I.

Whether parties to a contract intend to benefit a third party is a question of fact. *Julian Johnson Constr. Corp. v. Parranto*, 352 N.W.2d 808, 811 (Minn.App.1984). Findings of fact shall not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.-01; *Minnesota Valley Country Club, Inc. v. Gill*, 356 N.W.2d 356, 360 (Minn.App. 1984).

The Minnesota Supreme Court has adopted the intended beneficiary approach in the Restatement (Second) of Contracts § 302. *Cretex Cos. v. Construction Leaders*, 342 N.W.2d 135, 139 (Minn.1984). Under section 302, a third party can recover as an intended beneficiary where: (1) recognition of third-party beneficiary rights is appropriate and (2) a duty is owed to the beneficiary or the promisee intends to benefit the beneficiary. Restatement (Second) of Contracts § 302(1) (1987).

> If, by the terms of the contract, performance is directly rendered to a third party, he is intended by the promisee to be benefited. Otherwise, if the performance is directly rendered to the promisee, the third party who also may be benefited is an incidental beneficiary with no right of action.

*Buchman Plumbing Co. v. Regents of the University of Minn.*, 298 Minn. 328, 335, 215 N.W.2d 479, 484 (1974) (citation omitted). Any intent to benefit the third party must be found in the contract as read in light of all the circumstances at the time of contracting. *Twin City Constr. Co. v. ITT Indus. Credit Co.*, 358 N.W.2d 716, 718 (Minn.App.1984).

Appellants contend that, as intended beneficiaries, they have standing to bring this action to enforce the agreement. That is, as residual legatees under the 1980 will of George Engh, they are intended beneficiaries of the 1980 agreement between George and Phyllis Engh not to revoke or change their wills.

The 1980 agreement stated in pertinent part:

> The parties hereto are husband and wife and they each, on the 3rd day of October, 1980, made and executed Wills, copies of which are attached hereto and incorporated herein by reference.
>
> In consideration of their mutual agreements herein, each of the parties hereto do hereby agree that during the lifetime of each of the parties, neither party will revoke or change the Will executed by each of the parties on the 3rd day of October, 1980, copies of which Wills are attached hereto as heretofore stated.

This contract language states that neither party will revoke or change their 1980 wills. The wills were attached to the agreement and incorporated therein by reference. George's will, which was made a part of the agreement, includes appellants as residual legatees. The language of the

agreement with the incorporation of George's 1980 will illustrates George's intent to benefit appellants. Additionally, George and Phyllis were both present during his attorney's explanation of their wills and the consequences of signing the agreement. The attorney testified that George and Phyllis both understood the significance of the agreement.

The attorney testified that George wanted the agreement so that he could be absolutely sure that his will could not be changed by Phyllis following his death. George wanted to maintain control of his estate by having it distributed according to his 1980 will after his death. The attorney testified that George assured Phyllis at the time of the signing of the agreement that he would not change his will and that his family and her family would be beneficiaries. George's primary concern was the protection of the residual legatees.

> [T]he trial court's findings may be held clearly erroneous notwithstanding evidence to support such findings, if the reviewing court is left with the definite and firm conviction that a mistake has been made.

*Desnick v. Mast*, 311 Minn. 356, 366, 249 N.W.2d 878, 884 (1976) (citation omitted). In this case, the trial court's finding that appellants were not intended beneficiaries was clearly erroneous. Appellants do have standing to commence an action seeking enforcement of the terms of the 1980 agreement between George and Phyllis Engh. In reaching its decision, the trial court erroneously considered the three codicils to George's 1980 will which were not a part of the surrounding circumstances showing George's intent at the time of the making and signing of his 1980 will and agreement with Phyllis. The language of the agreement, the incorporation of the wills into the agreement, testimony of the significance of the wills and agreement to George and Phyllis, and testimony that George did not want Phyllis to be able to change the beneficiaries of his 1980 will at the time of the making of the will and agreement support appellants' contention that they are intended third-party benefi-

ciaries of the 1980 agreement between George and Phyllis.

## II.

Parties can contract to make wills. *Jannetta v. Jannetta*, 205 Minn. 266, 269, 285 N.W. 619, 621 (1939). These contracts may be enforced if there is sufficient consideration. *Newton v. Newton*, 46 Minn. 33, 35, 48 N.W. 450, 451 (1891); *Blanchard v. White*, 217 Neb. 877, 879, 351 N.W.2d 707, 709 (1984); 1 Williston On Contracts § 119B (3rd ed. 1957). "Consideration requires that a contractual promise be the product of a bargain." *Baehr v. Penn–O–Tex Oil Corp.*, 258 Minn. 533, 538, 104 N.W.2d 661, 665 (1960). Bargain means a negotiation resulting in one party voluntarily assuming an obligation upon condition of an act or forbearance by the other party. *Id.*

Appellants contend that sufficient consideration was given by Phyllis for the 1980 agreement when she: 1) mutually promised with George not to revoke or change her will, 2) forfeited in her will any power of appointment she may have at the time of her death, and 3) relinquished her right to elect against George's will and her right to a statutory share of the estate.

Whether there is sufficient consideration to sustain a contract is a question of law. *See Cady v. Coleman*, 315 N.W.2d 593, 596 (Minn.1982); *Kuhn v. Kuhn*, 281 N.W.2d 230, 235 (N.D.1979) (whether family agreement to distribute property upon parents' death is invalid as a contract because of failure of consideration is a question of law). On appeal, this court is not bound by the decision of the trial court regarding questions of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

Appellants argue that the mutual promises exchanged by Phyllis and George not to revoke or change their wills constitute sufficient consideration for their 1980 agreement. Where promises are mutual, made concurrently, and incorporated into a bilateral contract, such promises are sufficient consideration for each other. *Koehler & Hinrichs Mercantile Co. v. Illinois*

*Glass Co.,* 143 Minn. 344, 346, 173 N.W. 703, 704 (1919). An agreement may be enforced where one party agrees to do something to benefit the other party or to its own detriment on the terms that the other party agrees to do something to benefit the first party, or to its own detriment. *Associated Cinemas of America, Inc. v. World Amusement Co.,* 201 Minn. 94, 100–01, 276 N.W. 7, 11 (1937). While no Minnesota decisions have addressed the issue of mutual promises as sufficient consideration for a contract not to revoke or change wills, other jurisdictions have addressed the sufficiency of such consideration.

Other jurisdictions have followed the general rule of contract law that mutual promises are sufficient consideration to each other where two parties have promised to distribute their property through wills in an agreed-upon manner. *See Ugent v. Boehmke,* 123 So.2d 387, 388 (Fla. Dist.Ct.App.1960) (mutual promises by parties not to change or make a codicil to their joint and mutual will without consent of other party); *In re Estate of Chapman,* 239 N.W.2d 869, 872 (Iowa 1976) (husband got contractual assurance that if he died first, his property would be distributed according to his wishes); *Kuhn,* 281 N.W.2d at 235. However, respondent cites Iowa cases where mutual promises to distribute property through wills in an agreed-upon manner were found to be insufficient consideration because one spouse had no property to will. *See Youngberg v. Holstrom,* 252 Iowa 815, 825, 108 N.W.2d 498, 503 (1961) (husband received no benefit under wife's will); *Levis v. Hammond,* 251 Iowa 567, 575, 100 N.W.2d 638, 643 (1960) (mutual promises were only technical consideration); *In re Johnson's Estate,* 233 Iowa 782, 790, 10 N.W.2d 664, 669 (1943) (husband took nothing under wife's will).

George and Phyllis both mutually promised not to revoke or change their wills each to their own detriment in giving up this right. These promises were incorporated into a bilateral contract which was executed by both parties concurrently in their attorney's office on October 3, 1980. Although the facts in this case are similar to the Iowa cases in that George received no benefit under Phyllis' will so that he never probated the will, we hold that their mutual promises not to change their wills were sufficient consideration under Minnesota law. Because the parties' mutual promises were sufficient consideration, we do not reach the issues of statutory rights or conditional promise.

### III.

Whether the terms of a contract are ambiguous is a question of law. On appeal, this court makes a determination whether a contract is ambiguous without deference to the trial court's decision. *Blackburn, Nickels & Smith, Inc. v. Erickson,* 366 N.W.2d 640, 643 (Minn.App.1985), *pet. for rev. denied* (Minn. June 24, 1985). Contract language is given its plain and ordinary meaning. *Reliable Metal v. Shakopee Valley Printing, Inc.,* 407 N.W.2d 684, 687 (Minn.App.1987). A contract is ambiguous when its language is reasonably susceptible to more than one construction. *Blackburn, Nickels & Smith, Inc.,* 366 N.W.2d at 644.

Appellants argue that George breached the 1980 agreement not to revoke or change his will. They contend that the language of the 1980 agreement is clear and unambiguous where it states that:

during the lifetime of each of the parties, neither party will revoke or change the Will * * *.

George and Phyllis' wills and agreement were executed concurrently. The wills were incorporated into the 1980 agreement. Therefore, the documents must be read as a whole. *See Metro Office Parks Co. v. Control Data Corp.,* 295 Minn. 348, 352, 205 N.W.2d 121, 124 (1973) (determination that agreement is ambiguous must be reached through synthesis in which words, phrases, and sentences are understood in accordance with purpose of agreement as a whole).

■ The agreement terms clearly state that neither George nor Phyllis can change their wills during each of their lifetimes. The term "each" is defined in pertinent part as:

every one of two or more persons or things, composing the whole, *separately* considered.

*Black's Law Dictionary* 455 (5th ed. 1979) (emphasis added). The term "each," in the 1980 agreement, plainly refers to the separate lifetimes of George and Phyllis. The wills do not contradict this interpretation of their agreement. George breached the 1980 agreement when he added codicils to his 1980 will during Phyllis' lifetime, and also when he changed his will after Phyllis' death.

## IV.

 This type of action is not based on wills but upon an agreement "of which the Will is but evidence." *Mosloski v. Gamble,* 191 Minn. 170, 174, 253 N.W. 378, 381 (1934). Here, the competing policies are the enforceability of the contract and George's right to bequeath property as he desired. George could change his will, but the contract may be enforced in equity if it is valid and enforcement is necessary for the prevention of fraud. *See id.* at 175, 253 N.W. at 381.

## DECISION

We reverse the trial court and hold that appellants have standing as intended beneficiaries of the 1980 agreement to bring this action. The 1980 agreement is a valid contract supported by sufficient consideration where George and Phyllis made mutual promises not to revoke or change their wills. George breached the 1980 agreement when he changed his will. We remand to the trial court to address the breach of contract claim and to fashion any appropriate relief.

Reversed and remanded.