ROMAINE POWELL, PERSONAL REPRESENTATIVE OF THE ESTATE OF MARY BENGSTON, DECEASED, APPELLEE, V. AMERICAN CHARTER FEDERAL SAVINGS AND LOAN ASSOCIATION AND PIPER, JAFFRAY & HOPWOOD, INCORPORATED, APPELLEES, AND DAVID MICHEL ET AL., APPELLANTS.

514 N.W.2d 326

Filed April 8, 1994. No. S-92-441.

Alan L. Plessman for appellants.

Con M. Keating, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellee Powell.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

WHITE, J.

David Michel, Robert Michel, and James Michel appeal from a district court order declaring that property held jointly by themselves and decedent, Mary Bengston, was property of her estate and imposing a restraining order against disposing of the property. We reverse the decision of the district court and remand the cause for further proceedings.

This dispute concerns various money accounts and shares, each of which decedent, at the time of her death, owned jointly with one or more of appellants, her brothers.

On April 26, 1983, decedent and her husband executed a single-instrument joint and mutual will. The will was executed in Minnesota, their place of residence. The will provided that "[w]e give, devise and bequeath unto the survivor of us all and any real and personal property owned by us, either jointly or severally, for his or her own use." The will further provided that upon the death of the survivor, "we give, devise and bequeath all of the rest, residue and remainder of our estate of every kind and nature wheresoever situated whether or not owned by us or hereinafter acquired by us including any lapsed legacy" in the following percentages: Thomas Michel, 10 percent; David Michel, 25 percent; Robert Michel, 7$^1$/$_2$ percent; James Michel, 7$^1$/$_2$ percent; Eric Schatz, 10 percent; Romaine Powell, 15 percent; Stephen Neighbors, 10 percent; and Leone and Marvin Neighbors, 15 percent. At the time decedent and her husband executed the will, they were joint tenants in certain real property located in Minnesota. Decedent and her husband also shared joint tenant ownership in stocks and certificates of deposit.

On October 15, 1989, decedent's husband died, and the joint will was probated in Minnesota. The only property listed in the inventory of his estate was several stock certificates. The total estimated value of those stocks was $20,190.73. Although appellants stipulated that these stocks were held jointly with decedent, there is no evidence in the record of the actual ownership interests of either decedent or her husband in the stock certificates. The inventory of her husband's estate did not include any real estate property.

After her husband's death, decedent conveyed the Minnesota real property to appellants and herself as joint tenants. Sometime thereafter, the Minnesota real property was sold and the proceeds of the sale were used to purchase the accounts and shares which are the subject of the present litigation. The following constitutes an itemized list of the disputed property, the form of title in which it was held, and the value or extent of such property:

| | | |
|---|---|---|
| (1) Time access account | M. Bengston for David and Robert Michel | $10,000 |
| (2) Time access account | M. Bengston or David Michel | 36,500 |
| (3) Time access account | M. Bengston for David Michel | 33,000 |
| (4) Time access account | M. Bengston for James Michel | 33,000 |
| (5) Time access account | M. Bengston or James Michel | 36,500 |
| (6) Time access account | M. Bengston for Robert Michel | 33,000 |
| (7) Time access account | M. Bengston or Robert Michel | 36,500 |
| (8) Various shares | M. Bengston and David and Robert-joint tenants | 5,697 |

Appellants stipulate that a portion of the money used to purchase these accounts and shares came from the proceeds of the sale of the Minnesota real property. Appellants also stipulate that a portion of the money used to purchase these accounts and shares came from stocks and certificates of deposit which decedent held jointly with her husband. Appellants state that they do not know if money or property decedent inherited through her husband's estate was used to purchase the accounts and shares listed above. Appellants concede that they did not contribute any money to the purchase of the above-listed property.

After her husband's death, decedent moved to Nebraska, where she resided until her death on February 9, 1991. Appellee Romaine Powell was appointed personal representative of decedent's estate.

On June 3, 1991, Powell commenced an action for declaratory judgment in Lancaster County District Court pursuant to Neb. Rev. Stat. § 25-21,152 (Reissue 1989). Powell contends that the joint and mutual will restricted decedent's

right to dispose of property she acquired when her husband died, that such property is traceable to the property decedent held jointly with appellants, and that the accounts and shares should be made a part of decedent's estate.

After a stipulated trial, the district court entered an order declaring that the property held by appellants is property of decedent's estate. In issuing its order, the district court made several findings: (1) that by the terms of the joint will, decedent and her husband entered a binding, irrevocable contract to devise which is recognized by both Minnesota and Nebraska law; (2) that Minnesota law applied to the interpretation and enforcement of the contract; (3) that under either Minnesota or Nebraska law, the jointly held real property was subject to the terms of the contract set forth in the joint will; (4) that such property which passed to decedent is traceable to the accounts and shares held by appellants, and therefore (5) that the accounts and shares are subject to the terms of decedent's will regardless of the fact that they were held jointly by decedent and appellants.

Appellants filed a motion for new trial, which was overruled. Appellants timely appealed to the Nebraska Court of Appeals. We granted Powell's motion to bypass the Court of Appeals pursuant to Neb. Ct. R. of Prac. 2B (rev. 1992).

Appellants contend that the district court erred in (1) finding that Minnesota law controlled the validity and construction of the will, (2) finding that the accounts and shares are property of the estate and are controlled by the will, and (3) overruling appellants' motion for new trial.

The issues before us involve only questions of law. Regarding questions of law, an appellate court is obligated to reach conclusions independent of those reached by the trial court. *First Nat. Bank v. Daggett*, 242 Neb. 734, 497 N.W.2d 358 (1993); *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

Before we may address the merits of the present action, we must determine which state law governs the issues, Minnesota or Nebraska.

The determination of whether Minnesota or Nebraska law governs the issues raised in the present case is affected by the

theories underlying Powell's action. That action concerns both the testamentary and the contractual aspects of the joint will. We find that Minnesota law governs the resolution of both the testamentary and contractual issues raised in this action.

A joint will represents the testator's plan for devising the property that he owns at the time of his death. The determination of whether decedent's husband had the capacity to devise to decedent an interest in the jointly held property is governed by the law of the state where the real property is situated. See, Restatement (Second) of Conflict of Laws §§ 239 and 240 (1971); 94 C.J.S. *Wills* § 77 (1956). The determination of the extent of the husband's capacity to devise personal property is governed by the law of the state in which he was domiciled at the time of his death. See *id*.

The real property at issue was located in Minnesota, and decedent's husband was domiciled in Minnesota at the time of his death. Minnesota law therefore applies to determine whether and to what extent decedent's husband had the capacity to devise any interest in real and personal property in which he had an interest.

Joint wills also have a contractual aspect, and contract principles may apply to support Powell's claim that decedent breached her agreement with her husband when she used assets which may have been subject to the terms of the joint will.

Recently we have stated that the validity and interpretation of a contract are governed by the law of the state where the contract was made absent an express statute or public policy which prevents application of such a state's law. See *Jaramillo v. Mercury Ins. Co.*, 242 Neb. 223, 494 N.W.2d 335 (1993) (paralleling the Restatement of Conflict of Laws § 595 (1934)). We recognize, however, that we have also applied the approach set forth in the Restatement (Second) of Conflict of Laws § 188 (1971) to contract actions. See *Shull v. Dain, Kalman & Quail, Inc.*, 201 Neb. 260, 267 N.W.2d 517 (1978).

According to the Restatement (Second), *supra*, § 188 analysis, the rights and duties of the contracting parties are governed by the law of the state with the most significant relationship to the transaction and the parties. The relevant principles a court should consider are the place of the

contracting, the place of any negotiations which occurred, the place of performance, the location of the subject matter, and the domicil or residence of the parties. See *Shull, supra* (also applying the Restatement (Second) of Conflict of Laws § 203 (1971) regarding usury charges).

Although we recognize that in *Jaramillo* we applied the law of the state where the contract was made, it is apparent that if we had applied the Restatement (Second), *supra*, § 188 analysis to the facts in *Jaramillo*, the result would have been the same—California law would have governed the validity of the insurance contract. In an effort to present a consistent rule for future cases involving conflicts of law, we hereby adopt the approach set forth in the Restatement (Second), *supra*, § 188.

Applying these principles to the facts and circumstances of the present case, we find that Minnesota is the state with the most significant relationship to the transaction and the parties. At the time decedent and her husband entered into their agreement, they both resided in Minnesota, they executed the joint will in Minnesota, a significant portion of the property they owned consisted of real property which was located in Minnesota, and decedent's husband performed his promise in Minnesota when he died and the will was probated. The only relationship Nebraska has to the contract is that decedent was a resident of Nebraska when she died. We recognize that if her actions constituted a breach of the agreement, some of those actions may have occurred in Nebraska. However, we find that Minnesota has the most significant relationship to the formation of the contract. Therefore, Minnesota law governs the determination of the rights and obligations of the parties to that contract.

In the present case, we are concerned with the effect of a joint will on property and the various interests a party may have in such property. A joint will is a single instrument which is executed by two parties and which represents their respective wills. Although the joint will is a testamentary instrument, it may also be a contract or evidence of a contract between the two parties. The contract may be an agreement to devise, and it may include an agreement not to revoke the wills. See, Thomas E. Atkinson, Handbook of the Law of Wills § 49 (2d ed. 1953);

William M. McGovern, Jr., et al., Wills, Trusts and Estates § 9.5 (1988). Minnesota law recognizes and enforces joint contractual wills. Minn. Stat. Ann. § 524.2-701 (West 1975) provides:

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of this act, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

The contract and the will, although one document, are distinct and separate and are governed by different legal principles. Accordingly, a will is revocable because it is ambulatory in nature and does not become effective until the death of the testator. The surviving testator therefore may revoke the will, but the survivor or the survivor's estate may be subject to an action for breach of the contract if the survivor had agreed not to revoke the terms of the will. Atkinson, *supra*; McGovern, *supra*; *Concordia College v. Salvation Army*, 470 N.W.2d 542 (Minn. App. 1991); *Pruss v. Pruss, ante* p. 521, 514 N.W.2d 335 (1994).

When executing a joint contractual will, the parties specifically agree to devise their respective estates according to the terms of the will and may also agree not to revoke or modify that will. When the parties agree that the survivor of them shall not revoke or modify the will, the parties implicitly agree that the survivor of them will abide by the testamentary intent embodied in the joint will and not dispose of estate property in a manner which is contrary to that intent. *Robison v. Graham*, 799 P.2d 610 (Okla. 1990).

In the present case, the joint will executed by decedent and her husband includes the material provisions of a contract to devise and a contract not to revoke. Specifically, the will provides that decedent and her husband understand and agree that the provisions of the will are binding upon each and upon

the survivor. The consideration supporting the contract is the agreement of each to devise his or her respective estate according to the terms of the will. See *Concordia College, supra* (holding that exchange of mutual promises to devise is sufficient valid consideration).

The controversy raised by the parties concerns the extent of the survivor's power over the property which is subject to the terms of the joint will. We must first determine what property is subject to the terms of the joint will. We will then discuss what power the survivor has over that property.

Estate property is property which is subject to the terms of the joint will. The parties are free to designate what property will be estate property. As long as their agreement is not contrary to law, the designated property will be subject to the terms of the will. The fact that joint tenancy property passes to the survivor by title does not prevent the property from being designated as subject to the terms of the will. *Robison, supra.* See, *Moline Nat'l Bk. v. Flemming,* 91 Ill. App. 3d 398, 414 N.E.2d 936 (1980); *First United Pres. Church v. Christenson,* 64 Ill. 2d 491, 356 N.E.2d 532 (1976).

We emphasize that there is a distinction between property that is subject to the terms of a joint will and property that passes to the survivor pursuant to the terms of the will. For example, real property held in joint tenancy cannot be devised; rather, it passes by operation of law to the surviving tenant. Therefore the property does not pass to the survivor pursuant to the terms of the will. As stated above, however, the parties may designate in their will that their joint property be subject to the terms of the joint will. *Robison, supra*; *First United Pres. Church, supra*. After a review of our own cases, we recognize that we have contributed to the confusion between property which is subject to the terms of a will and property which is devised pursuant to the will. See, *Youngblood v. American Bible Soc.,* 227 Neb. 472, 418 N.W.2d 554 (1988); *Sheldon v. Watkins,* 188 Neb. 599, 198 N.W.2d 455 (1972). To the extent that these cases imply that a testator may change the method of transferring property held in joint tenancy by the language in his will, the cases are incorrect.

Powell appears to suggest that the real property that

decedent and her husband held as joint tenants passed to decedent pursuant to the terms of the will and, further, that her husband devised to decedent only a life estate interest in such property. This is incorrect. When decedent's husband died, he had no interest in the real property which he could devise because title automatically vested in the surviving tenant. See, *Sabot v. Fox*, 272 N.W.2d 280 (N.D. 1978); *Cranston v. Winters*, 238 N.W.2d 647 (N.D. 1976). (Powell's reliance on *Concordia College v. Salvation Army*, 470 N.W.2d 542 (Minn. App. 1991), for the argument is misplaced. There is nothing in the *Concordia College* opinion which suggests that the court ever considered such an issue.)

Decedent's husband could have devised an interest in the Minnesota real property to decedent only if the joint tenants had severed the joint tenancy before decedent's husband died. We find that the joint will did not sever the joint tenancy. See *First United Pres. Church, supra.* Minn. Stat. Ann. § 500.19, subd. 5 (West 1990), sets forth the only methods by which a joint tenancy in real property may be severed and legally effective. Section 500.19, subd. 5, provides:

> A severance of a joint tenancy interest in real estate by a joint tenant shall be legally effective only if (1) the instrument of severance is recorded in the office of the county recorder or the registrar of titles in the county where the real estate is situated; or (2) the instrument of severance is executed by all of the joint tenants; or (3) the severance is ordered by a court of competent jurisdiction; or (4) a severance is effected pursuant to bankruptcy of a joint tenant.

See *Wendt v. Hane*, 401 N.W.2d 457 (Minn. App. 1987). Real estate held in joint tenancy cannot be severed unless one of the conditions of § 500.19, subd. 5, has been satisfied. *Wendt, supra*.

Although Minnesota courts have not addressed whether a will constitutes an "instrument of severance," the Minnesota Court of Appeals has considered whether an action to partition a joint tenancy, coupled with the joint tenant's counterclaim for partition, constituted an instrument of severance. In *Wendt*, one of the joint tenants died before the court had issued a

judgment ordering severance of the joint tenancy. Heirs of the deceased tenant argued that the action severed the joint tenancy and that they inherited an interest in the property. The court strictly construed § 500.19, subd. 5, and held that the partition action did not constitute an instrument of severance. The court stated that the mutual intent of the joint tenants to sever the joint tenancy was irrelevant and that the documents filed by each in the partition action did not satisfy § 500.19, subd. 5.

Minnesota courts are reluctant to find that parties have, by their actions or general language, severed a joint tenancy within the meaning of § 500.19, subd. 5. To hold that the general language of the joint will in the present action constitutes an instrument of severance would undermine the purpose of the statute. In the present case, the joint will states that "[w]e give, devise and bequeath unto the survivor of us all and any real and personal property owned by us, either jointly or severally." By this language the parties recognized their jointly held property, but did not sever the joint tenancy.

Although the real property did not pass to decedent pursuant to the terms of the will, the real property was estate property and thus subject to the terms of the will. Any personal property owned by them as joint tenants was also estate property and subject to the terms of the will. According to the joint will, decedent and her husband agreed to devise to the survivor "all and any real and personal property owned by us, either jointly or severally." We find that this language demonstrates their intent that the estate property include property they each owned separately and property they owned as joint tenants. See, *Knolle v. Hunt*, 551 S.W.2d 755, 758 (Tex. Civ. App. 1977) (the language "devise [to survivor] all property of every kind" caused jointly held property to be subject to the terms of the will, but such property did not pass by virtue of the will); *Moline Nat'l Bk. v. Flemming*, 91 Ill App. 3d 398, 414 N.E.2d 936 (1980) (testators intended that the personal property they owned jointly be subject to the terms of their joint will); *First United Pres. Church v. Christenson*, 64 Ill. 2d 491, 356 N.E.2d 532 (1976) (testators intended that the real property they owned jointly be subject to the terms of their joint will).

We now must determine what power the surviving testator

has over the estate property.

Although a joint will does not contain any express restrictions on the survivor's use and disposition of estate property, the survivor implicitly agrees that she or he will carry out the testamentary intent of the joint will. *Robison v. Graham*, 799 P.2d 610 (Okla. 1990); *Knolle*, 551 S.W.2d at 758 (the language "the estate remaining in the hands of such survivor of us . . . shall vest or pass" indicates that the survivor reserves a right to do with the property as he or she chooses, but may not change the disposition plan of the will or make other testamentary transfers contrary to the will). In other words, the survivor has a contractual duty not to intentionally or unreasonably defeat the purpose of the joint will. See, *Pruss v. Pruss, ante* p. 521, 514 N.W.2d 335 (1994); *Knolle, supra.*

We emphasize that this contractual duty does not prohibit the survivor from using her property for the necessities and comforts of life. The survivor is not prohibited from changing the form of the property and is not prohibited from making reasonable gifts of estate property to third parties. Reasonableness of a gift would depend upon the proportion that the value of the gift bears to the value of the estate. *Humphries v. Whiteley*, 565 So.2d 96 (Ala. 1990); *Robison, supra*; Thomas E. Atkinson, Handbook of the Law of Wills § 49 (2d ed. 1953); William M. McGovern, Jr., et al., Wills, Trusts and Estates § 9.5 (1988); 79 Am. Jur. 2d *Wills* § 339 (1975); 94 C.J.S. *Wills* § 119 (1956); 97 C.J.S. *Wills* § 1367 e.(2) (1957); *Pruss, supra*. See, also, *Blackmon v. Estate of Battcock*, 78 N.Y.2d 735, 587 N.E.2d 280, 579 N.Y.S.2d 642 (1991) (stating that an agreement between joint testators which does not specifically prevent lifetime gifts does not necessarily prohibit such gifts); *Foulds v. First Nat. Bank*, 103 N.M. 361, 707 P.2d 1171 (1985) (stating that survivor had defeated the contractual agreement when she removed 95 percent of the assets from the joint estate); *Ikegami v. Ikegami*, 1 Haw. App. 505, 620 P.2d 768 (1980) (explaining that decedent could not divest himself of the bulk of his estate in derogation of the contract to devise).

The joint will executed by decedent and her husband states that upon her death or the death of her husband, "all and any

real and personal property owned by us, either jointly or severally, [would be devised for the survivor's] own use." The will further states that upon the death of the survivor, certain named beneficiaries would receive a percentage of "all of the rest, residue and remainder of our estate of every kind and nature . . . whether or not owned by us or hereinafter acquired by us." We find that this language gave decedent the power to dispose of the estate as a survivor may desire, provided that decedent did not make dispositions which defeated the testamentary purpose of their joint will.

Based on the foregoing principles, the issue becomes whether decedent's use of the proceeds from the sale of the real property and her use of any other estate property were intended to defeat the purpose of the joint will or were so unreasonable that the result was to defeat the purpose of the will.

After examining the record before us, we find it is impossible to determine whether decedent violated her contractual duties by defeating the purpose of the will. The record is void of any evidence regarding decedent's intent in disposing of the estate property or of the value of such dispositions in relation to the value of the entire estate. When this action was tried, however, the parties could not foresee the principles adopted in our opinion. We therefore reverse the decision of the district court and remand the cause for further proceedings.

To summarize, we find that Minnesota law applies to the issues presented by the parties, that the real property passed to decedent pursuant to the joint tenancy title, that such property was estate property and subject to the terms of the will, and that any other property which decedent acquired by will or joint title was also estate property and subject to the terms of the joint will. For the reasons addressed in this opinion, appellants' motion for new trial should have been granted. We remand the cause to the district court to allow it to decide whether decedent's use or disposition of the estate property defeated the testamentary intent and purpose of the joint will.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.