MABEL L. ALLEN ET AL., APPELLEES, v. CRYSTAL W. MAYO, APPELLANT.

279 N. W. 2d 617

Filed June 5, 1979. No. 42008.

Frost & Meyers, for appellant.

Alfred G. Ellick and David L. Buelt of Ellick, Spire & Jones, for appellees.

Heard before BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ., and CANIGLIA, District Judge.

CLINTON, J.

This is an action in equity by the heirs at law of Florence E. Mayo (two sisters and a brother) to impress a trust upon an undivided one-half interest in certain real and personal property, legal title to the whole of which stands in the name of the defendant, Crystal W. Mayo, second wife and surviving widow of Ralph D. Mayo. Crystal acquired the property in question through various conveyances and transfers from Ralph during their marriage.

The basis of the claim of trust is a written contract made on April 3, 1965, between Ralph and Florence, his then wife since deceased, which provided, among other things, that the survivor would devise and bequeath one-half of their property to the heirs at law of the other. The petition alleged that unless the transfers to Crystal by Ralph after their marriage were for valuable consideration, the transfers were ineffective to defeat the rights of the plaintiffs as beneficiaries of the contract. The petition also prayed for an accounting between the parties. The answer of the defendant was a general denial.

Florence and Ralph were married for more than 30 years and were childless. Florence died September 5, 1966. About 2 years after Florence's death, Ralph married Crystal. Ralph died October 11, 1975. At various times during the marriage, property owned by Ralph at the time of his marriage to Crystal was transferred to joint tenancy with her.

After trial the court entered a judgment in which it found the contract between Florence and Ralph, of which plaintiffs were the beneficiaries, was valid and enforceable; the transfers to Crystal by Ralph were not supported by any valuable consideration; Crystal had no knowledge of the agreement between Florence and Ralph; and Crystal took her interest in

the property subject to the rights of the plaintiff. The court ordered the plaintiffs to take a one-half interest in certain property: (1) Shares of stock of the Omaha National Corporation, plus one-half of the income therefrom received after Ralph's death; (2) a residential property subject to Crystal's life estate therein; (3) the proceeds from a certain land contract; and (4) a certain rental residential property, subject to the balance of an existing mortgage. The court granted a lien to Crystal in the approximate amount of $6,100, representing the amount which Crystal had contributed from her own funds to the improvement of the residential property after the marriage and also credited Crystal with certain specified payments which she had made upon the mortgage after Ralph's death. It rendered judgment against Crystal for the sum of $3,661.81, which represented one-half of the net income from the property since Ralph's death, less a 20 percent management fee.

Crystal makes and argues the following assignments of error: (1) The trial court erred in not finding that the transfers from Ralph to Crystal were supported by valuable consideration and therefore Crystal stood in the position of an innocent purchaser and took the property free of the claims of the plaintiffs under the contract. (2) The contract should not in any event be enforced because it is inequitable and oppressive for the reason that, except for Crystal's contribution to the support of Ralph, the property would not have been preserved. (3) Enforcement of the contract would be inequitable because Crystal sacrificed some pension rights by reason of early retirement in order to care for Ralph during his illness.

Ralph and Florence Mayo were married in 1932. No children were born to that union and, although each had been married previously, there were no surviving children of those marriages. In 1965 the

couple consulted an Omaha lawyer concerning a plan which they had agreed upon for disposition of their properties upon the death of each. They disclosed their plan to the lawyer and asked his advice as to whether it could be made binding on both. They were assured it could, and on April 3, 1965, they entered into a written contract.

At that time Ralph and Florence had a substantial amount of real and personal property, all of which was held in their joint names except their residence which was held in the name of Florence alone. The plan provided that upon the death of Florence, whether or not she survived Ralph, certain legacies and charitable bequests and debts to relatives of Florence would be paid. It also provided that, upon the death of the survivor, $5,000 would be paid to a sister-in-law of Ralph, if she then survived. The same day the contract was made, each executed wills to implement the plan. The plan also provided that the residence owned by Florence would be conveyed to the parties as joint tenants. This conveyance was made, executed, and delivered the same day. There is no dispute about any of the above facts and it is clear the contracts, wills, and deeds were entered into voluntarily and understandingly by the parties.

On the death of Florence in 1966, Ralph satisfied the bequests as required by the plan. The debt which the plan required to be paid was one owed to Florence's father. The latter, however, did not wish to be paid but wanted to continue to collect interest and so the old obligation was discharged by a new note.

On Decoration Day, 1968, Crystal and Ralph met when Crystal, at the request of one of Ralph's fellow members in the Eastern Star, made a social visit to Ralph who was then a patient in an Omaha hospital. As a result of this visit, Ralph later called Crystal and invited her to go out to dinner and she accepted. Thereafter Ralph took Crystal to dinner and to vari-

ous social functions. In November of 1968, he proposed marriage in the following fashion, quoting Crystal's testimony: "He came over in November, early in November, and when he came in he said, 'Would you get a piece of paper and a pencil.' And we sat down at the kitchen table and he said, 'Now, I am going to give you my assets and their worth, and I wish you would write them down.' So I did. I got the pencil and paper and he recited them one by one. 'And now,' he said, 'add them up.' So I added them up. And he sat back in his chair and he said, 'I am asking you to marry me. This is what I have to offer. If it is not enough, I will understand.' And I said, 'Jack, I think that would be very fine, and I appreciate your offer.' Then he said do you have any feeling about moving into the home where he and Florence had their home. And I said, 'No, I have nothing against it. I didn't know her and I have no feelings against it.' " Crystal, in her testimony, then described the property which she had written down on a piece of paper on that occasion, which property included that which is the subject of this action, as well as other property no longer in existence or as to which the plaintiffs have chosen to exert no claim. Ralph and Crystal were married on December 20, 1968.

On March 19, 1969, Ralph conveyed the residence to himself and Crystal as joint tenants with right of survivorship. In the spring of 1970, Ralph consulted the attorney who had drafted the contract between him and Florence and the other instruments which implemented that contract. Ralph asked the attorney to make a new property disposition plan for him in which all of the property would, on Ralph's death, be placed in a trust with the income therefrom being payable to Crystal for her life, and upon Crystal's death, one-third of the corpus would pass to Ralph's side of the family, one-third to Florence's side, and one-third to Crystal's heirs. The attorney declined

to draft and implement such a plan, saying he could not ethically do so because it would violate the terms of the contract between Ralph and Florence which he had drawn.

On September 15, 1970, Ralph conveyed the rental property to himself and Crystal as joint tenants with right of survivorship and on the same date conveyed the third item of property here involved, a land contract, to himself and Crystal as joint tenants with right of survivorship. On September 26, 1975, shortly before his death, Ralph conveyed his remaining interest in the real estate in the same fashion. At some time not precisely shown by the evidence but which was during his last illness, the Omaha National Bank shares were transferred to joint tenancy with Crystal. It is stipulated that Crystal paid no specific monetary consideration for any of these transfers. She did not testify that the various conveyances were made pursuant to any agreement. At the time this litigation was begun, Crystal held sole title to the above-listed and other property acquired from Ralph.

Ralph was retired at the time he and Crystal were married. His income was from social security and income from the rental property, the land contract, and interest from bonds and savings accounts. Crystal, at the time of the marriage, was employed as a teacher in the Omaha public schools. She continued in that occupation until the end of the 1973-74 school term when she took a leave of absence in order to care for Ralph who was in failing health. When she reached retirement age of 65, she retired and began to draw retirement pay. The taking of the leave of absence resulted in Crystal receiving substantially less retirement income than she would have received had she continued to teach an additional 2 years before mandatory retirement.

Shortly after the marriage Crystal sold her own home and the equity from that sale, approximately

$6,100, was used to improve the residential property belonging to Ralph in which the parties made their home. The parties also mortgaged that property for about $8,000 to make additional improvements.

During the marriage Crystal's income was greater than that of Ralph. The couple did not keep their income entirely separate. Savings bonds and savings accounts which Ralph had at the time of the marriage were exhausted, partly in payment of the mortgage indebtedness and in maintenance and repair of the rental property, as well as for travel to the Mayo Clinic where Ralph sought treatment for his health problems.

The rules of law which are applicable to the evidence and issues in this case are clear and covered by existing precedent. An agreement to devise and bequeath property is, where supported by consideration, valid and enforceable. Teske v. Dittberner, 70 Neb. 544, 98 N. W. 57; Crinkley v. Rogers, 100 Neb. 647, 160 N. W. 974. In such a case equity will impress a trust upon the property, which trust will follow it into the hands of the personal representatives of the promisor or into the hands of a grantee who has not given consideration for the conveyance. Teske v. Dittberner, *supra;* Crinkley v. Rogers, *supra.* A promise to convey or devise property made in consideration of marriage is valid and enforceable. Benson v. Burgess, 214 Iowa 1220, 243 N. W. 188. On appeals in equity, the Supreme Court will, in determining the weight of the testimony of the witnesses, consider that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the other. Nestle v. Welsh, 192 Neb. 71, 218 N. W. 2d 544.

The evidence in this case supports without dispute the contract between Ralph and Florence. The primary question of substance is a factual one, i.e., whether or not the conveyance and transfers to Crystal by Ralph were supported by valuable consid-

eration and whether Crystal took without notice of the contract of Ralph to devise and bequeath one-half of the property to Florence's heirs at law. The trial court found that Crystal did not know of the agreement. Hence, if the conveyance and transfer to her were made by Ralph pursuant to a promise by him that if Crystal would marry him he would convey or devise to her all of his property, then Crystal would take that property free of the claims of the plaintiffs. The trial court resolved the fact question against Crystal and, even though this case is triable de novo in this court, we will consider the fact that the trial court observed the witness and was in the best position to determine the facts.

The following items of evidence clearly tend to support the trial court's determination. We have set forth Crystal's testimony as to what occurred at the time the parties engaged to marry. She did not testify that at that time Ralph stated or promised if she would marry him he would convey or devise and bequeath to her all of his property if she should survive him. It is plain that two inferences might be drawn from what occurred. One would be that Ralph was saying: "This is all I own. It won't support us very well, you will get your statutory share of what is left when I die." The second inference would be: "If you marry me I will convey the property to you so that on my death you will have it all." Had the latter been Ralph's intention and had Crystal so understood it, then it would seem likely a contract to that effect would have been made, or immediately after the marriage conveyances would have been accomplished. Instead, what actually happened was the transfers were made at four different times, and such transfers do not appear to have been made pursuant to any agreement, but rather were motivated by developments during the marriage. The fact that Ralph consulted his lawyer about a new plan which did not conform to either his agreement with

Florence or the purported agreement with Crystal tends to support the conclusion there was no contract between Crystal and Ralph founded upon the marriage and her only expectations were those which the law gives her under the statutes of descent and distribution.

It is to be noted that the decision of the trial court respected fully Crystal's right to take her statutory share. We do not have before us and therefore need not decide the question of whether a contract such as is here involved could operate to defeat a wife's statutory share.

Crystal argues that specific performance of the contract should not be granted for the reasons which we have already referred to because the result is inequitable and oppressive to her. We find the trial court did not err in enforcing the agreement. It did return to her that contribution which she made to the homestead of the parties. The evidence was insufficient to show with any specificity whatever any other amounts which she may have put into any of the property. When Crystal married Ralph she was charged with knowledge that he had the right (the contract with Florence apart) to dispose of his estate but for her marital share. Tod v. Fuller, 78 So. 2d 713 (Fla.).

AFFIRMED.