MYRON J. YOUNGBLOOD, PERSONAL REPRESENTATIVE OF THE ESTATE OF LILLIAN A. RICE, DECEASED, APPELLEE, V. THE AMERICAN BIBLE SOCIETY ET AL., APPELLANTS, ORAL ROBERTS ET AL., APPELLEES.

418 N.W.2d 554

Filed January 29, 1988.   No. 86-142.

William M. Connolly of Conway, Connolly & Pauley, P.C., for appellants.

Michael L. Johnson of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee Youngblood.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Plaintiff-appellee brought this declaratory judgment action under Neb. Rev. Stat. § 25-21,152 (Reissue 1985), for directions in making distribution under a will executed by Lillian A. Rice on November 1, 1978 (1978 will), and codicil executed June 11, 1980, pending formal probate in the county court for Adams County, Nebraska, and to declare that the terms of a joint and mutual will executed by Wesley A. Rice and Lillian A. Rice, husband and wife, on October 10, 1952 (1952 will), have no effect on those distributions.

Wesley died December 4, 1960; thereafter, the 1952 will was admitted to probate as his will in Yuma County, Colorado. Those probate proceedings were settled and closed in 1962. Lillian died in 1984.

Plaintiff contends that upon Wesley's death, Lillian, as surviving joint tenant, became sole owner of five tracts of real estate in Colorado which Wesley and Lillian owned as joint tenants. At that time the real estate had a total value of approximately $43,000. Lillian sold all the tracts in December 1978 for $300,000; a part of that selling price is traceable to a

$225,000 note as an estate asset held by plaintiff. In the inventory, final report, and final decree filed in Wesley's estate in Yuma County, the jointly owned property was not included as an asset in the probated estate.

Appellants were named as residuary beneficiaries in the 1952 will. By their cross-petition they claim that the 1952 will was a contract between the testators, that the 1952 will was dispositive of all the testators' property including jointly owned property, and that a constructive trust should be imposed for their benefit upon the assets in the Lillian A. Rice estate.

Both parties filed motions for summary judgment. Judgment was entered for plaintiff, including these findings: There was no contract, the 1952 will did not apply to the property owned by Wesley and Lillian as joint tenants at the time of Wesley's death, and plaintiff could distribute the assets in the Lillian A. Rice estate according to her 1978 will and the codicil.

The appellants assign eight errors that we consolidate and discuss in these three issues: (1) The 1952 will was an irrevocable contract between the testators; (2) the 1952 will disposed of all of the testators' property, including joint tenancy property; and (3) a constructive trust should be imposed upon the property held by plaintiff in favor of the residuary beneficiaries under the 1952 will.

First, appellants contend that the 1952 will was a written memorandum of an irrevocable contract between Wesley and Lillian to distribute all of their property as provided in that will. When the 1952 will was executed, Wesley was a resident of Colorado and Lillian was a resident of Nebraska. "A claim that a subsequent revoking will is a breach of an agreement for the making of irrevocable reciprocal wills may properly be asserted in a court of equity, but not in the probate court by contesting the later will or by objection to a decree of distribution." (Syllabus of the court.) *Kimmel v. Roberts*, 179 Neb. 25, 136 N.W.2d 217 (1965).

In this jurisdiction a contract between a husband and wife to make reciprocal or mutual wills may be valid and enforceable; however, the execution of such wills, without more, does not bar their subsequent modification or revocation. *McKinnon v.*

*Baker*, 220 Neb. 314, 370 N.W.2d 492 (1985).

Evidence to support a contention that a will is enforceable by reason of a contractual obligation must be clear, satisfactory, and unequivocal. *McLaughlin v. Heath*, 164 Neb. 511, 82 N.W.2d 533 (1957). The intent of the testators is a primary consideration.

> In searching for the intention of the testators of a joint and mutual will, we must examine the entire will, consider each of its provisions, give words their generally accepted literal and grammatical meaning, and indulge in the presumption that the testators understood the meaning of the words used.

(Syllabus of the court.) *In re Estate of Corrigan*, 218 Neb. 723, 358 N.W.2d 501 (1984).

Where such a contract is established, "equity will impress a trust upon the property, which trust will follow it into the hands of the personal representatives of the promisor or into the hands of a grantee who has not given consideration for the conveyance." *Allen v. Mayo*, 203 Neb. 602, 608, 279 N.W.2d 617, 620 (1979); *Blanchard v. White*, 217 Neb. 877, 351 N.W.2d 707 (1984).

Appellants rely on *Geiger v. Geiger*, 185 Neb. 700, 178 N.W.2d 575 (1970), as authority supporting their contract theory. In *Geiger* it was held that there was a contract as shown by the recitation in the reciprocal will of John Geiger, and a like recitation in the will of Frances Geiger, " 'My wife, Frances Geiger, and myself have made these mutual wills as of the date this will bears, after an agreement between us that we would divide our property as hereinbefore provided.' " *Id.* at 701, 178 N.W.2d at 576. Also, John made this notation on the will of Frances, " 'Dec 22/54. I agree to these mutual wills. John Geiger.' " *Id.* These facts are distinguishable from the 1952 will and its execution.

Other than recitals common to mutual wills that the testators intend the instrument to be their joint and mutual will, the strongest language in the 1952 will appears as a recital in the introductory paragraph:

> and do each consent to the making of this Will by the other and accept hereunder, and do each hereby agree and

consent to this Will leaving to the other more or less than the one-half of his or her property to which he or she would otherwise be entitled, and declare that this Will *cannot be changed or varied by either, without the consent in writing by the other*.

(Emphasis supplied.)

A provision similar to the above recital, "without the consent in writing by the other," has been held to be a limitation upon the testators during the lifetime of the one first to die. See, *Sheldon v. Watkins*, 188 Neb. 599, 198 N.W.2d 455 (1972); *McKinnon v. Baker, supra*.

From a reading of the whole 1952 will, we can find no supporting evidence of an intention on the part of the testators that the 1952 will was a contract between them to dispose of all of their property, including jointly owned property, according to the terms of that 1952 will.

Next, appellants contend that by the terms of the 1952 will the testators intended that the 1952 will was dispositive of the jointly owned property owned by the testators.

Property owned in joint tenancy passes by reason of the nature of the title to the surviving joint tenant upon the death of the other, and does not pass by virtue of the provisions of the will of the first joint tenant to die. *Sheldon v. Watkins, supra*.

Appellants contend that there is a patent ambiguity in paragraph II of the 1952 will which, by interpretation, establishes the intent of the testators to include testators' jointly owned property as a part of the residuary estate. Paragraph II recites:

All of our estate and property, of any kind or nature whatsoever, and wheresoever situate, both real and personal, whether now owned or hereafter acquired (*not held in joint tenancy and not in tenancy in common*), we give, devise and bequeath to the survivor of us for his or her sole use and benefit for and during his or her natural life, together with full power to use, enjoy and dispose of the same; and upon the death of such survivor, we make, give and bequeath the following specific pecuniary legacies, to-wit:

[Here followed six separate bequests of $1 each.]

> *All the rest, residue, and remainder of said property and estate then remaining, as well as any and all other estate and property of any kind or nature whatsoever, then owned by such survivor,* we give, devise and bequeath to the following named charitable institutions or organizations, in the following shares and proportions, to-wit:
>
> To Friends University, of Wichita, Kansas, one-fourth (1/4th);
>
> To The Salvation Army, one-eighth (1/8th);
>
> To The American Bible and Tract Society, one-eighth (1/8th);
>
> To The Board of Foreign Missions of the Methodist Church, one-fourth (1/4th);
>
> To The Womans' Christian Temperance Union, one-eighth (1/8th);
>
> To The American Temperance League, one-eighth (1/8th).

(Emphasis supplied.)

" ' "A patent ambiguity must be removed by interpretation according to legal principles and the intention of the testator must be found in the will. . . ." ' " *In re Testamentary Trust of Criss*, 213 Neb. 379, 395-96, 329 N.W.2d 842, 852 (1983).

Paragraph III is enlightening:

> We are aware that all or most of the property and estate which we may own or may hereafter own is owned or will be owned by us in joint tenancy, and not in tenancy in common, and we understand that in the event that either of us shall survive the other, then and in that event, the title and interest of the one of us who shall first depart this life in and to said property owned in joint tenancy as aforesaid, *will pass to the survivor of us, and it is not our purpose or intention by this Last Will and Testament to alter or interfere with such passing or vesting of such jointly owned property*; but in the event that our deaths shall occur simultaneously or approximately so, or in the same common accident or calamity, or under circumstances causing doubt as to which of us survived the other, then we hereby give, devise and bequeath all of our

title and interest in and to such jointly owned property to the beneficiaries, and in the manner and shares set forth in paragraph II hereof; and in the event of such simultaneous death, any other property or estate which we or either of us may own at the time of such deaths, shall likewise pass to said beneficiaries, and in the manner and shares as set forth in said paragraph II hereof.

(Emphasis supplied.)

Concerning the last part of paragraph III relating to the possible contingency of simultaneous death, that provision was not operative, since Lillian died several years after Wesley. Further, that provision indicates that the testators were aware that a special provision was necessary to overcome the general rule that their jointly owned property was not subject to the dispositions made in their 1952 will.

"When there are definite and unambiguous expressions in a will, other expressions that are capable of more than one construction must be construed, if reasonably practicable, so as to harmonize with the plain provisions of the will." *Anderjaska v. Anderjaska*, 216 Neb. 527, 529, 344 N.W.2d 478, 479 (1984).

We conclude that the parenthesized reference in the beginning of paragraph II, "not held in joint tenancy . . .," is clearly and fully explained in paragraph III, that the testators were aware of their ownership of jointly owned property, that in the event of the death of one of the joint owners the title to such jointly owned property vested in the survivor, and that it was their intention that the will was not to be interpreted as changing that transfer of title by operation of law.

Lastly, in consideration of the foregoing findings, appellants' claim that a constructive trust should be imposed was unsupported in the evidence, and it is without merit.

The judgment of the trial court should be affirmed.

AFFIRMED.