ALBERT J. PRUSS ET AL., APPELLANTS, V. JAMES PRUSS AND
RODNEY L.A. PRUSS, COPERSONAL REPRESENTATIVES OF THE
ESTATE OF BESSIE T. PRUSS, ET AL., APPELLEES.

514 N.W.2d 335

Filed April 8, 1994.   No. S-92-266.

Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf & Boggy, for appellants.

Larry C. Johnson, of Johnson & Vaughan, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

WHITE, J.

This appeal arises from an order of the Dodge County District Court in favor of appellees denying appellants' request to have a constructive trust imposed on the estate of Bessie T. Pruss. Appellants contend that Bessie's estate should be distributed pursuant to the mutual and reciprocal wills executed by decedent and her husband in November 1980. We reverse the judgment of the district court and remand the cause for further proceedings.

Bessie and Albert Pruss had nine children: Albert, Francis, Richard, James, Rodney, Emil, Leonard, Theodore, and Edward. Appellants are three of the nine children: Albert,

Francis, and Richard. Appellees are James, Rodney, Emil, Leonard, and Theodore. Edward predeceased Bessie and Albert. Edward was survived by Michael and Carolyn, who are also appellees in the present action. Together, appellants and appellees are the only interested parties in the several wills executed by Bessie and Albert.

In September 1980, decedent and her then living husband, Albert, executed a single document purported to be a joint contractual will (September 1980 will). The September 1980 will was drafted and executed after consultation with their attorney, Lawrence Yost. Also present during the discussions regarding the September 1980 will was Albert, an appellant and the eldest son of Bessie and Albert. The evidence presented at trial indicates that the estate of Bessie and Albert at the time they executed the September 1980 will consisted of their residence, approximately 130 acres of farmland located in Dodge County (which Bessie held in her name only before her September 1980 transfer to Albert of an undivided one-half interest in the farmland), and an expected inheritance by Albert from his deceased uncle.

The relevant provisions of the September 1980 will provided as follows: (1) Attorney Yost would serve as the personal representative, and he would not be required to post a bond. (2) Emil, Richard, James, and Rodney were to be excluded from inheriting from Albert's estate because they had already received substantial gifts outside the will. (3) James and Rodney were to be excluded from inheriting from Bessie's estate for the same reason as stated above. (4) If Bessie predeceased Albert, he would receive a life estate in her one-half interest in the Dodge County farmland. The remainder interest was to be divided into one-seventh shares for Albert, Francis, Emil, Richard, Leonard, and Theodore. The remaining one-seventh share was to be divided into two one-fourteenth shares for Michael and Carolyn. (5) If Bessie predeceased Albert, the remainder and residue of her estate would pass to six sons and two grandchildren: Albert, Francis, Emil, Richard, Leonard, Theodore, Michael, and Carolyn. (6) If Albert predeceased Bessie, she would receive a life estate in his one-half interest in the Dodge County farmland. The remainder interest was to be

divided into one-fifth shares for Albert, Francis, Leonard, and Theodore. The remaining one-fifth share was to be divided into two one-tenth shares for Michael and Carolyn. (7) If Albert predeceased Bessie, the remainder and residue of his estate would pass to four sons and two grandchildren: Albert, Francis, Leonard, Theodore, Michael, and Carolyn.

The final relevant provision of the September 1980 will stated that simultaneously with the execution of the will, Bessie had transferred an undivided one-half interest in "certain real estate" to Albert. The provision stated that this transfer was consideration for their agreement to make the terms of the will irrevocable unless both consent and, further, that after the death of either party, the terms would become irrevocable.

Contemporaneously with the execution of the September 1980 will, two land conveyances occurred. First, Bessie conveyed by deed to Albert an undivided one-half interest in the Dodge County farmland. (We note that this deed names Bessie and Albert as grantors in this conveyance; however, the undisputed testimony establishes that Bessie was the sole owner of the Dodge County land until the September 1980 conveyance.) Second, Albert and Bessie conveyed their residence by deed to Albert and Rodney (father and son) as joint tenants.

Subsequent to the execution of the September 1980 will, Francis recommended that the wills be redrafted to correct some deficiencies he perceived in the wills. At the time, Francis was an attorney licensed to practice law in Iowa. In November 1980, Francis visited his parents and drafted new mutual and reciprocal wills; Bessie and Albert executed these wills (November 1980 wills). Although the November 1980 wills were typed by Attorney Yost's secretary and were executed by Albert and Bessie at Yost's law offices, Yost did not consult with Bessie and Albert or participate in the drafting of these wills.

The relevant provisions of Albert's November 1980 will provide as follows: (1) Francis and Richard are to serve as corepresentatives, and no bond will be required. (2) James is excluded from the provisions of the will because he has already received real property by deed during Albert's lifetime. (3) If Albert predeceases Bessie, she shall receive a life estate in his

one-half undivided interest in their residence. Rodney shall receive the remainder interest in Albert's one-half interest in the residence. (4) If Albert predeceases Bessie, she shall receive a life estate in all other real property presently owned or later acquired by Albert. The remainder interest is to be divided into one-seventh shares for sons Albert, Francis, Emil, Richard, Leonard, and Theodore. The remaining one-seventh share is to be divided into one-fourteenth shares for Michael and Carolyn. (5) If Albert predeceases Bessie, she shall receive the remainder and residue of his estate "absolutely to do with as she shall choose."

The remaining provisions of Albert's will regarding the disposition of property provide for the disposition of his property in the event that he survived Bessie or in the event that Bessie and Albert died in a common disaster.

There are two remaining provisions of Albert's November 1980 will which are relevant to the issues before this court. First, the ninth provision concerns the contractual agreement between Albert and Bessie to make the terms of their wills irrevocable. That provision states:

> My wife, BESSIE T. PRUSS, and I are making Wills at this time, on the same date, and each of our Wills contains provisions for the benefit of the survivor of us, and for the benefit of our children and two grandchildren, and I have transferred an undivided one-half interest in certain farm real estate to my wife, BESSIE T. PRUSS, and in consideration of said transfer and our mutual promises, it is our intention that our Wills be construed as mutual, reciprocal Wills, they have been executed pursuant to a prior oral agreement, one in consideration of the other, and it is our intention that under no circumstances is the Will of either of us to be changed except upon written notice to the other prior to the time of the death of either of us, and further, under no circumstances is the Will of the survivor of us to be changed after the time of the death of one of us.

Second, the eleventh provision concerns inter vivos gifts by Albert to his children and grandchildren. The eleventh provision of Albert's November 1980 will states:

It shall not constitute a violation of the agreement which I have entered into with my wife, BESSIE T. PRUSS, nor shall it constitute a violation of the terms of my Will and my wife's Will if I elect to make gifts prior to the time of my death, in equal amounts to all of my children (with one child's share to be divided equally between my grandchildren, MICHAEL PRUSS and CAROLYN PRUSS), whether or not said children are named as residuary beneficiaries under my Will.

The relevant provisions of Bessie's November 1980 will provide as follows: (1) Francis and Richard shall serve as corepresentatives of the estate, and no bond shall be required. (2) James is excluded from the provisions of the will because he has already received real property by deed during Bessie's lifetime. (3) If Albert predeceases Bessie, Rodney shall receive Bessie's one-half undivided interest in the residence. (4) If Albert predeceases Bessie, sons Albert, Francis, Emil, Richard, and Theodore shall each receive a specific money bequest in the amount of $6,000. The two grandchildren, Michael and Carolyn, shall each receive a specific bequest of $1,500. (5) If Albert predeceases Bessie, the remainder and residue of her estate shall be divided into one-seventh shares for Albert, Francis, Emil, Richard, Leonard, and Theodore. The remaining one-seventh share is to be divided into one-fourteenth shares for Michael and Carolyn.

The other provisions of Bessie's will regarding the disposition of property provide for the disposition of her property in the event that she predeceased Albert or in the event they died in a common disaster.

There are two remaining provisions of Bessie's November 1980 will which are relevant to the issues before this court. First, the ninth provision of the will concerns the contractual agreement between Albert and Bessie to make the terms of their wills irrevocable. That provision states:

My husband, ALBERT B. PRUSS, and I are making Wills at this time, on the same date, and each of our Wills contains provisions for the benefit of the survivor of us, and for the benefit of our children and two grandchildren, and I have transferred an undivided one-half interest in

certain farm real estate to my husband, ALBERT B. PRUSS, and in consideration of said transfer and our mutual promises, it is our intention that our Wills be construed as mutual, reciprocal Wills, they have been executed pursuant to a prior oral agreement, one in consideration of the other, and it is our intention that under no circumstances is the Will of either of us to be changed except upon written notice to the other prior to the time of the death of either of us, and further, under no circumstances is the Will of the survivor of us to be changed after the time of the death of one of us.

Second, the eleventh provision concerns inter vivos gifts by Bessie to her children and grandchildren. The eleventh provision of Bessie's November 1980 will states:

It shall not constitute a violation of the agreement which I have entered into with my husband, ALBERT B. PRUSS, nor shall it constitute a violation of the terms of my Will and my husband's Will if I elect to make gifts prior to the time of my death, in equal amounts to all of my children (with one child's share to be divided equally between my grandchildren, MICHAEL PRUSS and CAROLYN PRUSS), whether or not said children are named as residuary beneficiaries under my Will.

Contemporaneously with the execution of both Albert's and Bessie's November 1980 wills, several land conveyances occurred. First, Albert and Rodney (joint tenants in the residence) conveyed the residence back to Albert and Bessie as tenants in common. Second, to correct descriptions in the approximately 30 acres deeded to James in May 1980, James and his wife, Marilyn, conveyed to Bessie and Albert the same 30 acres of the Dodge County farmland. Third, Bessie and Albert reconveyed the 30 acres to James and Marilyn. It is undisputed that Bessie did not convey any "certain farm real estate" to Albert and that Albert did not convey any "certain farm real estate" to Bessie in November 1980.

Albert died approximately 2 months after the November 1980 wills were executed. His November 1980 will was admitted to probate, and his estate was distributed according to its terms without objection.

In March 1983, Bessie executed a new will (1983 will) which affects appellants' proportional shares in her estate as compared to her November 1980 will. Bessie stated in her 1983 will that she was revoking the November 1980 will because that will did not accurately reflect her wishes and because Francis did not correctly represent to her what the November 1980 will purported to do.

The relevant provisions of Bessie's 1983 will provide as follows: (1) Sons James and Rodney shall serve as copersonal representatives of her estate, and no bond shall be required. (2) Rodney shall receive all of Bessie's interest in the residence. (3) All the remaining real property owned by Bessie shall be divided into one-seventh shares for Albert, Francis, Emil, Richard, Leonard, and Theodore. The remaining one-seventh share is to be divided into one-fourteenth shares for Michael and Carolyn. (4) The remainder and residue of Bessie's estate is to be divided in the following manner: to Albert, a one-ninth share less $2,500; to Francis, a one-ninth share less $6,700; and to Richard, a one-ninth share less $4,800. The remaining amount of the residue of her estate, including the $14,000 from the above shares, is to be divided into one-sixth shares for Emil, Leonard, Theodore, James, and Rodney. The remaining one-sixth share is to be divided into two one-twelfth shares for Michael and Carolyn. (5) If the residue of Bessie's estate is insufficient to make the deductions attributed to the shares of Albert, Francis, and Richard, they shall pay the amount specified into her estate as a condition precedent to their inheriting any real property discussed in provision (3) above. (6) If Albert, Francis, or Richard contest the terms of the 1983 will, such contesting party shall forfeit any inheritance under the provisions of Bessie's will, except as stated in provision (3).

According to the will, the deductions attributed to the shares for Albert, Francis, and Richard outlined in provision (4) above represent the money that Bessie believes these sons cost her in legal fees when they unsuccessfully attempted to have a guardian appointed to manage Bessie's affairs. Bessie also states in her will that she does not want these three sons to share equally with the other children in her estate and that she wants them to bear the expense of the guardianship proceedings.

When Bessie executed her 1983 will, the only interests she had in any real property were in the residence and the Dodge County farmland. With regard to the residence, Bessie held one-half undivided interest in fee and a life estate in the other one-half interest. With respect to the Dodge County farmland, she held a one-half undivided interest in fee and a life estate in the other one-half interest.

Pursuant to the terms of Bessie's 1983 will and the property interests created by the various deeds executed by Albert and Bessie, the following would occur at Bessie's death: (1) Rodney would receive the residence. (2) Albert, Francis, Emil, Richard, Leonard, and Theodore would each receive a one-seventh share of the one-half interest in the Dodge County farmland, and Michael and Carolyn would each receive a one-fourteenth share of that land (pursuant to Albert's November 1980 will). (3) Albert, Francis, Emil, Richard, Leonard, and Theodore would each receive a one-seventh share of the other one-half interest in the Dodge County farmland, and Michael and Carolyn would each receive a one-fourteenth share of that land. The shares of Albert, Francis, and Richard, however, would be subject to conditions set forth in Bessie's 1983 will discussed above. (4) Albert, Francis, Richard, Emil, Leonard, Theodore, James, and Rodney would receive equal shares of the residue of Bessie's estate. However, the shares of Albert, Francis, and Richard would be subject to the deductions discussed above. Michael and Carolyn would share equally in one share of the residue.

On the contrary, if Bessie's estate is subject to the terms of the November 1980 will, the following would occur at her death: (1) James would not inherit anything under either Bessie's or Albert's will; (2) Albert, Francis, Emil, Richard, Leonard, and Theodore would each receive a one-seventh share in the one-half interest of the Dodge County farmland, and Michael and Carolyn would each receive a one-fourteenth share in that land (pursuant to Albert's November 1980 will); (3) Albert, Francis, Emil, Richard, and Theodore would each receive $6,000, and Michael and Carolyn would each receive $1,500 (pursuant to Bessie's November 1980 will); and (4) the residue of Bessie's estate would be divided into one-seventh shares for Albert, Francis, Emil, Richard, Leonard, and Theodore, and

Michael and Carolyn would receive a one-fourteenth share of the residue.

Bessie died in 1990, and her 1983 will was offered for probate. As outlined above, the 1983 will affects the shares that appellants, Albert, Francis, and Richard, would have received pursuant to the terms of the November 1980 wills. Appellants filed suit in district court. Appellants contend that the 1980 will was irrevocable and that Bessie breached the contractual agreement embodied in the 1980 wills when she executed her 1983 will. In essence, appellants wish to have the court impose a constructive trust on Bessie's estate pursuant to the terms of the November 1980 wills and to have an accounting ordered with respect to inter vivos gifts Bessie may have made contrary to the terms of the November 1980 wills.

After a trial, the district court issued a judgment in favor of appellees. The court made several findings in support of its judgment. First, the court found that Bessie's November 1980 will was the product of undue influence exerted by Francis and that, therefore, the terms of that will could not be imposed on the estate. Second, the court found that there was a failure of consideration for the November 1980 wills and that, therefore, no binding contract was created between Bessie and Albert to make their wills irrevocable. Third, the court found that contrary to appellants' contentions, the November 1980 wills did not prohibit Bessie from changing her testamentary disposition with regard to her personal property or giving unequal inter vivos gifts from such personal property to the children after Albert's death. Finally, the court denied both appellants' and appellees' requests for attorney fees.

In an effort to present the assignments of error in a manner consistent with our analysis, we have summarized and reorganized the errors raised by appellants. Appellants contend that the district court erred in (1) finding that there was a failure of consideration underlying the 1980 wills, (2) finding that Bessie's November 1980 will was the product of undue influence, (3) finding that the November 1980 wills did not restrict Bessie's inter vivos gifts to her children, and (4) failing to grant appellants' request for attorney fees pursuant to Neb. Rev. Stat. § 30-2481 (Reissue 1989).

Appellants commenced an equitable action in the district court to have a constructive trust imposed on the estate of Bessie Pruss pursuant to the terms of the mutual and reciprocal wills that Bessie and Albert executed in November 1980. Appellants also request that the court order an accounting of gifts that may have been made by Bessie contrary to the terms of the November 1980 wills. An action to impose a constructive trust and an action for an accounting are equitable actions. *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993); *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993); *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992); *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); *Smith v. Daub*, 219 Neb. 698, 365 N.W.2d 816 (1985). In an appeal of an equity action, an appellate court reviews the record de novo, subject to the rule that where credible evidence is in conflict on material issues of fact, an appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Miller v. Westwood*, 238 Neb. 896, 472 N.W.2d 903 (1991); *Gottsch, supra*; *Southern Lumber & Coal v. M.P. Olson Real Est.*, 229 Neb. 249, 426 N.W.2d 504 (1988).

A party seeking to have a constructive trust imposed has the burden to establish by clear and convincing evidence the factual foundation required for a constructive trust. *Gottsch, supra*; *Lone Oak Farm Corp. v. Riverside Fertilizer*, 229 Neb. 548, 428 N.W.2d 175 (1988). The factual foundation for the present action is the contractual agreement not to revoke the November 1980 wills. Appellants thus carry the initial burden of proving that the parties entered into a valid agreement not to revoke their mutual and reciprocal wills. See, *Youngblood v. American Bible Soc.*, 227 Neb. 472, 418 N.W.2d 554 (1988); *Geiger v. Geiger*, 185 Neb. 700, 178 N.W.2d 575 (1970). See, also, *Mabry v. McAfee*, 301 Ark. 268, 783 S.W.2d 356 (1990); *Hatbob v. Brown*, 394 Pa. Super. 234, 575 A.2d 607 (1990); *Matter of Estate of Fusse*, 803 S.W.2d 245 (Tenn. App. 1990).

Neb. Rev. Stat. § 30-2351 (Reissue 1989) provides:

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after January

1, 1977, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

Appellants contend that Albert and Bessie entered into a contract not to revoke their mutual wills and that the material provisions of that contract are embodied in the ninth clause of each of the mutual wills executed in November.

An agreement to devise property is, where supported by consideration, valid and enforceable. *Youngblood, supra*; *Blanchard v. White*, 217 Neb. 877, 351 N.W.2d 707 (1984). In essence, the contract must be supported by sufficient valid consideration. *Blanchard, supra*; *Allen v. Mayo*, 203 Neb. 602, 279 N.W.2d 617 (1979). Moreover, a mutual will executed in connection with an agreement based on sufficient consideration is both contractual and testamentary in nature. The contract becomes irrevocable as to the surviving spouse upon the death of the other and the probate of the deceased spouse's contractual will. *Geiger, supra*; *Kimmel v. Roberts*, 179 Neb. 25, 136 N.W.2d 217 (1965); *Kerper v. Kerper*, 780 P.2d 923 (Wyo. 1989). It is important to note that the contract does not make the wills irrevocable because wills, by their nature, are ambulatory and may be revoked at any time. However, if the surviving spouse revokes the mutual contractual will, an action may lie for breach of the contract against the estate of the survivor. *Youngblood, supra*; *Geiger, supra*; *Kimmel, supra*; *Kerper, supra*.

As we review the formation and enforceability of the contractual agreement between Bessie and Albert, we are guided by established principles of contract law. See *id*. In connection with our analysis of the contract, we will first address whether there was sufficient consideration to form the contract and second, if a contract was formed, whether that contract was breached.

The stated consideration which purportedly supports both Albert's and Bessie's November 1980 wills is made up of two

parts. First, they transfer from one to the other an "undivided one-half interest in certain farm real estate"; second, each provides the other with their future promise to devise their respective estates pursuant to the terms of the November 1980 wills. We will separately consider each part of the stated consideration to determine whether it was sufficient to form the contract.

To consider whether the transfer of an "undivided one-half interest in certain farm real estate" is sufficient consideration, we must determine to what property the statement refers. The cardinal rule of testamentary construction is to ascertain and effectuate the intention of the testator as expressed in the will. To construe a will, the court must give effect to the language of the will in light of the circumstances surrounding the making and execution of the will. *Gretchen Swanson Family Foundation, Inc. v. Johnson*, 193 Neb. 641, 228 N.W.2d 608 (1975); *Hays v. Hohnson*, 187 Neb. 307, 189 N.W.2d 475 (1971); *Father Flanagan's Boys' Home v. Graybill*, 178 Neb. 79, 132 N.W.2d 304 (1964); *Hahn v. Verret*, 143 Neb. 820, 11 N.W.2d 551 (1943). See, also, *Haerry v. Hoffschneider*, 202 Neb. 534, 276 N.W.2d 196 (1979) (construing intent by the language of the will together with the facts and circumstances existing at the time the will was executed).

As stated above, the undisputed evidence establishes that at the time that Bessie and Albert drafted and executed the November 1980 wills, the only farm real estate either owned was their respective interests in the Dodge County farmland. In November 1980, Albert owned a one-half interest in the Dodge County farmland which he acquired when Bessie conveyed it to him in September 1980. After that transfer in September 1980, Bessie owned the remaining one-half interest in the same Dodge County farmland. We thus find that the language "undivided one-half interest in certain real estate" contained in both Bessie's and Albert's wills, read together with the circumstances existing at the time that they executed the wills, indicates that Bessie and Albert transferred to each other an undivided one-half interest in the same Dodge County farmland.

According to the language of the wills, these transfers were part consideration for their agreement not to revoke their wills.

We find, however, that such a transfer by itself was insufficient to support the formation of a contract.

Consideration is sufficient to support a contract if there is any detriment to the promisee or any benefit to the promisor. Generally, a court will not inquire into the adequacy or value of the stated consideration so long as the performance or the promise of performance is one that the promisor considers of value. We have stated that even a "peppercorn" or nominal consideration may be sufficient consideration as long as the promisor deems it of value. The monetary value of the performance or the promise of performance is irrelevant. It is sufficient that the promisee did something he or she was not otherwise required to do or that the promisor received something he or she was not otherwise entitled to receive. *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985); *Omaha Nat. Bank v. Goddard Realty, Inc.*, 210 Neb. 604, 316 N.W.2d 306 (1982); Arthur L. Corbin, Corbin on Contracts § 127 (one vol. ed. 1952); 3 Samuel Williston, A Treatise on the Law of Contracts §§ 7:3 and 7:4 (Richard A. Lord 4th ed. 1992).

However, when the inadequacy of the stated consideration is so gross or transparent, a court may find that the consideration was not a bargained-for exchange. If there is no bargain, there is no consideration. Corbin, *supra*. In such a situation, the statement of consideration reflects a mere pretense or the equivalent of a mere formality. In other words, the statement of consideration is a false recital and by itself is insufficient to support a contract. *Id*.

In the present case, we find that the stated exchange of an "undivided one-half interest in certain farm real estate" between Albert and Bessie is a mere pretense of consideration or a recital without substance. According to the language of the provision, Albert received no benefit except that which he already had, and Bessie parted with nothing except that which she was receiving from Albert. In other words, they each gave the other a one-half interest in the same Dodge County farmland. In this respect, that part of the stated consideration is analogous to an exchange of past consideration or an exchange of preexisting duties: The promisor is receiving a benefit that he

has already received or that he is already entitled to receive, and the promisee is parting with what she has already parted with or with what she is already required to part with. The inadequacy of such an exchange between Bessie and Albert is such that there could not have been a true bargain between the parties as to the stated land transfer. The part of the stated consideration regarding the exchange of certain farm real estate was insufficient to support the formation of a contract not to revoke their wills.

The fact that part of the stated consideration is insufficient, however, does not prevent another part of the consideration from operating as sufficient valid consideration to form a contract between the parties. John D. Calamari & Joseph M. Perillo, The Law of Contracts § 4-14 (3d ed. 1987); Corbin, *supra*, § 126. See, *Shea v. Begley*, 94 Or. App. 554, 766 P.2d 418 (1988); *Jim Murphy & Associates, Inc. v. LeBleu*, 511 So. 2d 886 (Miss. 1987).

In the present case, the fact that part of the consideration is invalid—the exchange of certain farm real estate—does not prevent the other part of the consideration—the mutual promises between Albert and Bessie to devise their property according to the terms of the will—from operating as sufficient valid consideration. See, Calamari & Perillo, *supra*; Corbin, *supra*; 3 Williston, *supra*, § 7:48. Mutual promises between spouses regarding the disposition of their property are sufficient valid consideration to form the contract. *Geiger v. Geiger*, 185 Neb. 700, 178 N.W.2d 575 (1970); *Shea, supra*. Therefore, we hold that the November 1980 wills executed by Albert and Bessie are supported by sufficient valid consideration to form a contractual agreement not to revoke their wills.

Bessie and Albert thus entered into a valid and enforceable contract which became irrevocable after Albert's death. The execution of a subsequent will, like the execution of any will, revokes a prior mutual or joint will. *Geiger, supra*; *Kimmel v. Roberts*, 179 Neb. 25, 136 N.W.2d 217 (1965). When Bessie executed her 1983 will which revoked her November 1980 will, she breached the contract she made with Albert.

We now address appellees' contention that Bessie's

November 1980 will was the product of undue influence exerted by Francis and that it should not be used to impose a constructive trust on her estate.

To establish undue influence, the party asserting that theory has the burden to prove (1) that the person who executed the challenged instrument was subject to undue influence, (2) that there was an opportunity to exercise undue influence, (3) that there was an intent to exercise undue influence for an improper purpose, and (4) that the result was clearly a product of the undue influence. *Miller v. Westwood*, 238 Neb. 896, 472 N.W.2d 903 (1991); *Craig v. Kile*, 213 Neb. 340, 329 N.W.2d 340 (1983); *In re Estate of Saathoff*, 206 Neb. 793, 295 N.W.2d 290 (1980). The burden to prove undue influence is clear and convincing evidence because the present case is an equitable action, not a probate action. See *In re Estate of Price*, 223 Neb. 12, 388 N.W.2d 72 (1986) (explaining that the burden of proof on a particular issue is controlled by the nature of the cause of action, not by the instrument involved).

In evaluating the evidence in the present case we are mindful that it is not merely the exercise of influence which invalidates the action; rather, it is the exercise of *undue* influence. *Miller, supra*; *In re Estate of Price, supra*. Undue influence is unlawful or fraudulent influence which controls the will of the actor. *Miller, supra*. Moreover, mere suspicion, surmise, or conjecture is not enough to warrant a finding of undue influence. There must be a solid factual foundation on which to rest the inference of the existence of undue influence. *Craig, supra*; *Andersen v. Andersen*, 177 Neb. 374, 128 N.W.2d 843 (1964). See *McDonald v. McDonald*, 207 Neb. 217, 298 N.W.2d 136 (1980).

This court has stated on numerous occasions that undue influence is generally surrounded by all possible secrecy. It is nearly impossible to prove with direct evidence. It is usually shown through inferences drawn from the facts and circumstances surrounding the testator; his life, character, and mental condition, as shown by the evidence; and the opportunity afforded designing persons for the exercise of improper control. *In re Estate of Villwok*, 226 Neb. 693, 413 N.W.2d 921 (1987).

We recognize that in undue influence cases, the burden of proof is onerous. Nonetheless, we have stated:

> The fact that the exercise of undue influence is difficult to prove, however, does not mean that the party seeking to establish such influence has met his or her burden by proving circumstances from which it may be inferred equally that such took place or that such did not take place. Certainly, a party seeking to prove the exercise of undue influence is entitled to an evaluation of all the circumstances proved, together with all the reasonable inferences to be drawn therefrom . . . but if all the evidence is circumstantial and the inferences to be drawn therefrom are as equally consistent with the hypothesis that undue influence was not exercised as they are with the hypothesis that such influence was exercised, the burden of proving the exercise of undue influence by [clear and convincing evidence] has not been met.

*In re Estate of Price*, 223 Neb. at 20-21, 388 N.W.2d at 78-79. The party bearing the burden must put forth evidence that convincingly establishes the necessary elements of undue influence. Anything less is not enough to support a finding of undue influence.

Appellees rely on our prior cases in which we discussed the burden of going forward on the issue of undue influence. This reliance is misplaced in the present case because although the burden of going forward on the issue of undue influence may shift to the proponent of the instrument, the ultimate burden of proof remains at all times on the party asserting the issue. See *In re Estate of Novak*, 235 Neb. 939, 458 N.W.2d 221 (1990).

After reviewing the evidence in the present case, we find that appellees have not proven by clear and convincing evidence that the November 1980 will was the product of undue influence. The evidence conclusively establishes that Francis had the opportunity to exercise undue influence over Bessie. Francis was the only person with his parents when the wills were redrafted; indeed, Bessie and Albert requested that Francis return home and help them with the wills. Francis stated that he was the only person who stayed with his parents during the time the November wills were drafted, and there is no evidence that

Bessie and Albert sought or obtained independent legal advice regarding the November 1980 wills. However, the mere opportunity for a party to exert undue influence on the actor is not sufficient to establish an inference that such influence was exercised. *Andersen, supra*.

Appellees point to the various letters that Francis sent Bessie after Albert died and argue that the letters demonstrate that he had a desire to control what Bessie did with her property. Even accepting that Francis had an intent to exert undue influence over Bessie in November 1980, appellees cannot prove that the result was clearly the product of the alleged undue influence or that Bessie was subject to such influence.

The crucial evidence with regard to these remaining two issues is the September 1980 will. A prior will, executed when the testator's mental capacity is unchallenged and as to which the exercise of undue influence is not charged, and which conforms substantially as to the results produced by the instrument contested, may be considered as competent evidence to refute the charge of undue influence. *In re Estate of Flider*, 213 Neb. 153, 328 N.W.2d 197 (1982); *In re Estate of Bose*, 136 Neb. 156, 285 N.W. 319 (1939).

There has been no allegation that the September 1980 will executed by Bessie and Albert was the product of undue influence. Moreover, Francis, whom appellees contend is the person who exercised the alleged undue influence in the execution of the November 1980 will, was not present during the drafting and execution of the September will, nor did Francis participate, directly or indirectly, in the making of the September will. The testamentary plan embodied in the September will is substantially similar to that embodied in the November wills. Both sets of wills evidence an intent by Bessie and Albert to distribute their respective estates equally among their children and two grandchildren, with the exception of children to whom they planned to give substantial inter vivos gifts.

Of particular significance in our consideration of whether Francis exerted his influence over the November 1980 wills is the difference between Francis' share under the September 1980 will compared to the November will. Francis' share under the

September will would have been larger than that under the November will. Additionally, pursuant to the terms of the September will, a lesser number of children shared in the distribution of the estate, and thus, Francis was to receive a larger proportional share than that provided for in the November will.

The only advantage that appellees contend that Francis gained by influencing the November 1980 will is the fact that the will named him as corepresentative of the estate and that the bond requirement was waived. We are not persuaded that such evidence proves that the November will was the product of undue influence. As to the waiver of a bond, all of the wills executed by Bessie and Albert waived the bond requirement for whoever was named as representative.

Finally, appellees suggest that Bessie was mentally and physically infirm when she executed the November 1980 will. Appellees did not present any evidence on this issue and merely rely on the testimony offered by appellants at trial. That testimony does not persuade us that Bessie lacked the ability to understand the wills or express her wishes. The fact that appellants attempted to have a conservator appointed to manage Bessie's affairs a year after the will was executed does not prove that she lacked testamentary capacity at the time the wills were executed.

After a review of the evidence, we find that appellees have failed to establish by clear and convincing evidence each of the required elements of undue influence and that the district court erred in holding that the November 1980 will was the product of undue influence.

To summarize, we find that Bessie and Albert formed a contractual agreement to make the terms of their November 1980 wills irrevocable. The material terms of that agreement are embodied in the November 1980 wills. Second, we find that Bessie breached that contract when she executed the 1983 will. Third, we hold that appellees failed to prove that Bessie's November 1980 will was the product of undue influence.

Appellees make an argument that we must address before we may find that the terms of the November 1980 will must be imposed on Bessie's estate. Appellees contend that because

Albert's November 1980 will devises to Bessie all of his personal property "to do with as she shall choose," Bessie could change her will with regard to such property without violating the terms of the November 1980 will.

This argument is without merit. Spouses enter into a specific and irrevocable testamentary plan to express a specific agreement on the *method* of devising of their respective estates. It is the plan itself that the parties are contracting to create. In other words, Albert and Bessie bargained for and received each other's promise that upon either's death their estate would be distributed in a particular manner. To permit the surviving spouse to alter the plan is a breach of that agreement. With respect to the personal property Bessie may have held at her death, Albert believed that she would distribute it according to the November 1980 plan. It is irrelevant that her interest in such property was absolute. Moreover, although Bessie may have been entitled to use and dispose of that property during her lifetime, that right does not include the right to alter the testamentary plan. Significantly, appellees failed to present or discuss any cases to support their argument, nor have we found any. See *Knolle v. Hunt*, 551 S.W.2d 755 (Tex. Civ. App. 1977) (explaining that although a joint will devises to the survivor an absolute interest in property and allows the survivor to reasonably use such property during his lifetime, the survivor may not make a subsequent will disposing of that property in a different manner than that set forth in the joint will).

A constructive trust shall be imposed on Bessie's estate pursuant to the terms of the November 1980 contractual will, notwithstanding the probate of her 1983 will. We must now determine whether the terms of the November 1980 will restricted Bessie from making gifts during her lifetime.

The eleventh provision of Bessie's November 1980 will provides:

> It shall not constitute a violation of the agreement which I have entered into with my husband, ALBERT B. PRUSS, nor shall it constitute a violation of the terms of my Will and my husband's Will if I elect to make gifts prior to the time of my death, in equal amounts to all of my children (with one child's share to be divided equally between my

grandchildren, MICHAEL PRUSS and CAROLYN PRUSS), whether or not said children are named as residuary beneficiaries under my Will.

Appellants contend that this provision prevents Bessie from making any gifts unless she makes gifts of equal value to each of the children.

Appellants argue that Bessie made unequal gifts during her lifetime and seek to have an accounting ordered to determine the extent such gifts were made by Bessie. We find that this provision did not restrict Bessie from giving gifts to her children with the property she acquired from the residue of Albert's estate.

Appellants' argument rests upon Francis' testimony regarding the meaning of this provision. Although a court may consider extrinsic evidence to construe the testator's intent from the language of a will, a court may only do so when the language of the will is ambiguous. We have consistently held that

> "[w]hen language in a will is clear and unambiguous, construction of a will is unnecessary and impermissible. [Citations omitted.] As a corollary of the immediately preceding rule, when ambiguity exists in a testamentary provision, construction of a will is necessary. Ambiguity exists in an instrument, including a will, when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings."

*In re Estate of Ritter*, 227 Neb. 641, 645, 419 N.W.2d 521, 524 (1988) (quoting *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987)). Moreover, to discern the intent of the testator from the language of the will, a court must examine the will in its entirety, considering and liberally interpreting every provision. In examining the provisions of the will, the court shall employ the generally accepted literal and grammatical meaning of words used in the will and assume that the testator understood the words stated in the will. *In re Estate of Ritter, supra; In re Estate of Walker, supra.*

The intent of Bessie and Albert, as expressed in their November 1980 wills, is discernable from the clear and

unambiguous language of those wills. It is unnecessary, therefore, for us to consider and evaluate any extrinsic evidence concerning an alternative interpretation not reasonably inferred from the language itself. The fifth provision of Albert's November 1980 will devises to Bessie an absolute interest in the residue of his estate "to do with as she shall choose." The eleventh provision states that Bessie or Albert may make equal gifts to their children during their lifetimes without violating the terms of their mutual agreements. This provision does not prohibit Bessie from making gifts in any other manner to their children and grandchildren. We hold that the eleventh provision is not a specific restriction on Bessie's use and disposition of the property she received pursuant to the terms of Albert's November 1980 will.

We note that appellants do not argue that any gifts Bessie may have made were with the intent to defeat the general purpose of the mutual contractual wills or that such gifts were unreasonable and thus destroyed the purpose of the contractual wills. See, 79 Am. Jur. 2d *Wills* § 339 (1975); 94 C.J.S. *Wills* § 119 (1956); *Blackmon v. Estate of Battcock*, 78 N.W.2d 735, 741, 587 N.E.2d 280, 283, 579 N.Y.S.2d 642, 645 (1991) (stating that "an agreement that the survivor's entire estate will be left to certain beneficiaries does not necessarily prevent a survivor from making a lifetime gift, since such a gift would not necessarily defeat the purpose of the agreement"); *In re Estate of Lenders*, 247 Iowa 1205, 78 N.W.2d 536 (1956). See, also, *Allen v. Mayo*, 203 Neb. 602, 279 N.W.2d 617 (1979) (implicitly recognizing that a complete divestment of the survivor's estate would be a breach of the contract to devise). The record does not provide us with a basis from which to determine whether Bessie made gifts of such an unreasonable amount that she defeated the purpose of the mutual contractual agreement. We therefore remand this issue for consideration by the district court.

The final issue remaining concerns the various requests made by appellants and appellees for attorney fees and costs. Because of our holdings on the issues in this case, we affirm the denial by the district court of appellees' request for attorney fees and costs pursuant to Neb. Rev. Stat. § 25-1336 (Reissue 1989).

Appellants seek to receive from the estate the necessary costs incurred for prosecuting this action. See § 30-2481. We remand that issue for consideration by the district court.

In summary, we find that (1) a mutual contractual will was created by Bessie and Albert and the terms of that agreement are embodied in the November 1980 wills, (2) Bessie breached that agreement when she executed her 1983 will, (3) Bessie's November 1980 will was not the product of undue influence, and (4) the eleventh provision of the November 1980 wills was not an express restriction on the survivor's lifetime use of estate property. We order that a constructive trust be imposed on Bessie's estate pursuant to the terms of the November 1980 will. We further order that the issue of whether the gifts Bessie may have made during her lifetime defeated the purpose of the contractual wills be remanded for further consideration. Finally, we remand for consideration whether appellants are entitled to fees and costs pursuant to § 30-2481.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GRANT, J., Retired, dissenting.

I respectfully dissent from that portion of the majority opinion which determines that the November 1980 will of Bessie Pruss was not the product of undue influence and that portion which denies appellees' requests for fees and costs and remands the cause for consideration whether appellants are entitled to fees and costs under Neb. Rev. Stat. § 30-2481 (Reissue 1989).

As I view the evidence, it appears to me that the trial court was correct in determining that the November 1980 will was the product of undue influence exerted by Francis Pruss, a son of Albert and Bessie, and a graduate of Michigan Law School.

It appears that Albert and Bessie executed a valid will, drawn by their family attorney, Lawrence Yost, in September 1980. Francis received a copy of this will from his brother Albert. Francis believed there were deficiencies in the will, including the fact that Yost was named as personal representative. Francis called his parents about his concerns and told them that new wills should be drawn. Francis traveled to Fremont, Nebraska, from Cedar Rapids, Iowa. He arrived late in the evening before

Thanksgiving Day in 1980, with his typewriter, and with portions of a will already drafted to his satisfaction. He testified that he spent the next 24 hours working with his parents on the terms of the new wills.

I agree completely with the majority opinion that "[t]he evidence conclusively establishes that Francis had the opportunity to exercise undue influence over Bessie." I cannot agree that "appellees cannot prove that the result was clearly the product of the alleged undue influence . . . ." I think the evidence is sufficient to establish undue influence, without giving any weight to the fact that Francis is a lawyer and a person affected by the new and old wills.

The majority opinion states that the crucial evidence was the September 1980 will, which, the majority states, "conforms substantially as to the results produced by the instrument contested." In the most general terms, it can possibly be said that the November 1980 will conforms generally with the September will. It is unnecessary to dissect, analyze, and compare the two wills. In the first place, if the wills are basically the same, what is all the excitement about? Why is Francis touring the countryside to rectify the situation? Second, the November will restores Francis to control of the estate as the personal representative, together with whatever funds flow from that job.

I also do not think it is of much significance that Francis' share under the September will would have been larger than under the November will. As personal representative, Francis could have requested whatever fee arrangements were necessary to make him whole. In addition, man lives not by bread alone. There are apparently great personal rewards for Francis if he can impose his desires on Bessie and on his siblings.

I would affirm the decision of the trial court, including the trial court's ruling on requested fees. During his mother's life, after the execution of the November wills, Francis tried to put her under conservatorship. He failed, both in the county court and on his appeal to the district court. Francis then tried to enjoin his mother from making gifts during her life. He failed. I would not give Francis another bite of this apple. An end should be put to this effort to emulate the legendary Jarndyce

case in Charles Dickens' "Bleak House," referred to in *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793 (1990), and *Bert Cattle Co. v. Warren*, 238 Neb. 638, 471 N.W.2d 764 (1991) (Shanahan, J., dissenting).