MARIAN G. PFLASTERER, APPELLEE, V. OMAHA NATIONAL
BANK, EXECUTOR OF THE ESTATE OF THEODORE N.
GANAROS, DECEASED, ET AL., APPELLEES, IMPLEADED
WITH THEODORE N. GANAROS, JR., ET AL., APPELLANTS.

268 N. W. 2d 104

Filed July 19, 1978. No. 41592.

Frank Meares, for appellants.

Robert D. Mullin of Boland, Mullin & Walsh, and
Ben F. Shrier, for appellee Pflasterer.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action for specific performance of an

oral contract to make a will, instituted in the District Court for Douglas County by Marian G. Pflasterer against the executor of the estate of her father, Theodore N. Ganaros, deceased, and the beneficiaries under decedent's probated will. The District Court determined plaintiff was entitled to specific performance and a trust was impressed upon the assets of the estate. Decedent's son and nephew, two of the beneficiaries under the will admitted to probate, appeal from this judgment. We affirm.

Decedent operated a restaurant and tavern in North Omaha for many years until he was forced to close the establishment in 1968, when the state acquired the property by eminent domain. In 1971, he purchased 1½ lots in North Omaha and began construction of a motel, a restaurant and lounge, and a package liquor store. Needing $150,000 to complete the project, decedent, in March 1971, contacted Dale Kruse, senior vice president of the North Side Bank, seeking a 15-year loan. Kruse was aware decedent was in his upper 70's, and informed him he doubted the bank, while interested, would be able to make the requested loan because of his age. Decedent then volunteered the information he intended to draw up a new will and mentioned he was making plaintiff the principal beneficiary. He offered to have plaintiff cosign the required promissory note. This matter was taken up with the loan committee which approved the loan if a cosigner, younger than decedent who would be a primary beneficiary of the estate, could be obtained.

Over objection, plaintiff was permitted to testify that her father approached her in March or early April 1971, and asked her to cosign a note for a loan he needed to complete the construction project. She refused his request on this occasion. Decedent broached the subject again in April, telling plaintiff he would make a will leaving "almost everything" to her if she would cosign the note. He also stated

plaintiff would be shown the will before she signed the note. Plaintiff agreed to be a cosigner in exchange for decedent's promise that he would not change the will at some future date.

On April 21, 1971, decedent executed a new will at the offices of the North Side Bank. This will bequeathed the sum of $1,000 each to three granddaughters, and established a spendthrift trust in the amount of $25,000 for decedent's son. The remainder of the estate was bequeathed to plaintiff, who was also named executrix and trustee.

On this same date, decedent signed an affidavit which had been prepared by the bank's attorney. The affidavit reads, in pertinent part, decedent "has been advised by the bank that due to his advanced age the bank would not consider making the loan except as it was reasonably assured that the person or persons who would be his principal beneficiary or beneficiaries under his estate were co-makers of the promissory note for said loan; that the affiant hereby undertakes to the North Side Bank that he will make no material change in the principal beneficiary or beneficiaries of his estate or reduce the proportionate share of said estate which will accrue to said principal beneficiary or beneficiaries under his last will and testament except as the North Side Bank has agreed to and approved of the same; that the affiant is aware that the representations made in this affidavit to the North Side Bank are material considerations in the granting of said loan and any breach in the representations made by affiant herein to the North Side Bank would constitute a breach in a material consideration given the bank in determining to make said loan."

Decedent directed plaintiff to go to the bank on April 23, 1971, for the purpose of cosigning the note. Prior to signing she carefully read the will and the affidavit. The note, signed by plaintiff and decedent, contains the following provision: "The indebt-

edness evidenced hereby shall become due and payable at once at the option of the payee if any change takes place in the ownership of the real estate hereinabove referred to, except upon the death of the owner of the above real estate; provided however, that if there is any material change in the distribution plan of Theodore N. Ganaros as shown by his present will dated April 21, 1971, then this note may become due and payable at once, at the option of the payee."

In February or March 1974, during a visit by plaintiff at the liquor store, decedent showed her an unsigned will he had recently had prepared. Plaintiff examined the will and determined it did not leave her "almost everything." She became furious and told her father it was a "dirty trick" and to take her name off the note. This conversation was substantiated by a liquor store employee. Plaintiff testified the subject of a new will was never mentioned again, and she did not learn that another will had in fact been executed until after decedent's death in April 1976.

The will admitted to probate was executed by decedent on October 4, 1974. Plaintiff's bequest under this will was reduced to a 30 percent share of a residuary trust, and a like share was given to decedent's son, one of the appellants herein. The other appellant, decedent's nephew, received all the capital stock in decedent's business. The Omaha National Bank was named as executor.

Plaintiff commenced this action in District Court approximately 3 months after her father's death. In its decree the court made the following findings: Plaintiff and decedent entered into a valid oral agreement; plaintiff fully performed her obligations under this agreement and this breach constituted a fraud upon plaintiff; and the will, dated April 21, 1971, relied upon by plaintiff, fixed decedent's obligation under the oral contract. The court held plain-

tiff was entitled to specific performance of the oral contract on the terms set forth in the will executed April 21, 1971. A trust was impressed upon the assets of the estate to give her the benefits of the will of April 21, 1971, and the executor was ordered to make an accounting.

Appellants contend the trial court erred in permitting plaintiff to testify concerning her conversations with decedent. They argue this testimony should have been excluded as incompetent under the dead man's statute, section 25-1202, R. R. S. 1943, notwithstanding the fact the statute was repealed prior to trial by Laws 1975, L.B. 279, § 75, p. 537. It is a well-established principle that whether a proceeding be criminal or civil, the procedures and procedural rules to be applied are those which are in effect at the date of the hearing or proceeding and not those in effect when the act or violation is charged to have taken place. State v. Shiffbauer, 197 Neb. 805, 251 N. W. 2d 359 (1977). It is obvious we are dealing with a procedural rule. There is no merit to appellants' contention.

Appellants inferentially challenge the authority of the District Court to impress a trust upon the assets of the estate after decedent's last will was admitted to probate. This contention was fully answered in Cox v. Johnston, 139 Neb. 223, 296 N. W. 883 (1941), where we stated: "Strictly speaking, there cannot be a decree for the specific performance of a contract to make a will, since such an instrument is, by its nature, revocable by the promisor during his life, and cannot be made by him after his death. It has long been recognized that courts of equity may grant relief in a form that is usually equivalent to a decree of specific performance of a contract to leave property by will, after the death of the defaulting promisor, by fastening a trust upon his estate in the hands of those taking it with notice of such contract or by devise or descent. Jurisdiction in the equity court in

such cases does not rest upon any distinction between real estate and personal property, but rather upon the ground of the inadequacy of an action at law."

Equity will grant specific performance of a parol agreement to leave property to another if it is proved by evidence convincing and satisfactory, and if it has been wholly performed by one party and its nonperformance would be a fraud on him. Dunmire v. Cool, 195 Neb. 247, 237 N. W. 2d 636 (1976).

The evidence in this case establishes beyond any doubt the existence of the oral contract upon the terms testified to by plaintiff. Her testimony is fully corroborated by decedent's written affidavit, the provision in the note, and the testimony of bank officials. Plaintiff is entitled to the specific performance of the contract in accordance with the terms of the will dated April 21, 1971.

The judgment of the District Court is in all respects correct and is affirmed.

AFFIRMED.