KATHRYN L. KRAMER PHILP ET AL., APPELLANTS, V.
FIRST NATIONAL BANK & TRUST COMPANY, PERSONAL
REPRESENTATIVE OF THE ESTATE OF IRMA KRAMER,
DECEASED, ET AL., APPELLEES.

326 N.W.2d 48

Filed November 5, 1982. No. 44504.

Ephraim L. Marks and James M. Woodruff of Marks, Clare, Hopkins, Rauth & Cuddigan, for appellants.

William G. Line and John F. Kerrigan of Kerrigan, Line & Martin, for appellee Katharine Douglas.

Vance E. Leininger of Albert, Leininger & Grant, for appellee First National.

Heard before BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ., and BRODKEY, J., Retired.

McCOWN, J.

This is an action in equity based upon a written agreement allegedly intended to constitute a succession contract and a contract to make a will. The amended petition alleged the breach of the agreement by the decedent in making a will contrary to the agreement, and prayed for specific performance

of the written agreement by impressing a trust upon the assets in the estate of the decedent, who had executed the agreement. The defendants filed general demurrers, which were sustained. Upon plaintiffs' refusal to plead further, plaintiffs' amended petition was dismissed and this appeal followed.

Plaintiffs, Kathryn L. Kramer Philp and Kristin Kramer Philp, are sisters, the only issue of their father, Frederic Kramer, who died in 1959. Frederic and his sister, the defendant Katharine Kramer Douglas, were the only children of Irma Kramer. Irma Kramer died in 1980. She had been widowed for many years before 1959 and never remarried. Plaintiffs and their aunt, Katharine Douglas, are the sole heirs at law of Irma Kramer and were potentially so in 1962 when the agreement which is the basis for this action was executed. The defendant bank is the personal representative and former conservator of the Irma Kramer estate, the value of which is inventoried in excess of $400,000.

When Frederic Kramer died in 1959 his mother, Irma Kramer, and his sister, Katharine Douglas, filed claims against his estate. Irma Kramer's claims included a $50,000 claim for certain properties previously deeded by her to her son, allegedly subject to recall at will, a $6,600 claim involving an insurance policy on her life held by Frederic, and a $40,000 claim involving corporate stock. Katharine Douglas filed two claims, one for an undivided one-half of the properties included in the $50,000 claim of her mother, and one involving the same $6,600 insurance policy.

Over an extended period of time settlement of the claims was negotiated, including provisions governing future distribution of her property, testamentary or otherwise, by Irma Kramer as between the heirs of Frederic Kramer and Katharine Douglas. Those negotiations culminated in the settlement agreement of August 4, 1962, which is involved here.

The agreement provided that all claims of Katharine Douglas and all claims of Irma Kramer except the $50,000 claim were to be settled by transfers of an insurance policy, corporate stock, or cash by the estate to the claimants. The $50,000 claim of Irma Kramer was to be disallowed.

The final executed version of the agreement was preceded by a prior draft proposal prepared by the attorneys for the estate of Frederic Kramer, which incorporated in paragraphs 10 and 11 provisions which would have required Irma Kramer to execute and deliver her will in a form which would have irrevocably split her entire estate into two portions, identical in size, with the single exception of a prior $50,000 bequest to Katharine Douglas or her issue to equalize and compensate for the properties involved in the $50,000 claim of Irma Kramer in Frederic Kramer's estate. This draft would have prohibited lifetime transfers of property by Irma Kramer for less than fair value and would have obligated her to retain her holdings substantially intact, except for her immediate and necessary living expenses, during the remainder of her natural life. Those proposed provisions of paragraphs 10 and 11 were rejected by Irma Kramer through her attorney who, in turn, drafted and supplied the present language of paragraph 10 as follows: "10. The parties recognize that the amount being allowed on the settlement to third party [Irma Kramer] is less than the amount of her claim but the reduction is being made in the interest of promoting family harmony.

"In this same spirit, the third party agrees that in any last will and testament which she might make or in any distribution of her property, or substantial gifts, she will not discriminate against the issue of Frederic Kramer, deceased.

"However, any distribution, testamentary or otherwise, to fourth party [Katharine K. Douglas], or her heirs, designated to offset the property trans-

ferred to Frederic Kramer which is the subject of this litigation not to exceed $50,000 in value shall not be construed as such discrimination."

A letter by Irma Kramer's attorney to the attorneys for the executrix of the Frederic Kramer estate submitting the revised and final form of the agreement which was later executed stated: "We enclose herewith copy of proposed settlement agreement in connection with the Kramer matter. This is identical with the one submitted by you with the exception that I deleted Paragraphs 10 and 11 of your proposed contract and replaced it with a paragraph which is in line with my telephone conversation of a few days ago.

"Believe me, I had a difficult time getting Mrs. Kramer's approval of the substitute commitment. It is my opinion that this is a binding agreement on her, and I have so advised her. On the other hand, it gives her an opportunity to control her own life. It is my firm conviction that once this matter is settled, that the grandchildren of Mrs. Irma Kramer can resume the normal relationship between grandmother and granddaughters and the grandchildren will benefit both financially and otherwise."

The final form of the settlement agreement dated August 4, 1962, was executed by plaintiffs' mother as the executrix of the estate of Frederic Kramer, by the guardian ad litem of the plaintiffs, and by Irma Kramer and Katharine Douglas.

On May 27, 1971, Irma Kramer executed the will which is presently in process of probate. The will, after provisions which revoked prior wills and directed the payment of debts, claims, and expenses, provided: "THIRD: I give, devise, and bequeath all of my residuary estate, be it real or personal, and wheresoever situated, to my daughter, Katharine Kramer Douglas, if she survives me, the same to be hers absolutely. If my daughter does not survive me, then I give, devise, and bequeath all of my

residuary estate, be it real or personal and wheresoever situated, to her children (of whom there are at this time two, namely, Pamela Douglas and Steele Douglas) who survive me, in equal shares, the same to be theirs absolutely.

"FOURTH: I have intentionally made no provision herein for my other grandchildren, the children of my deceased son Frederic Kramer, for the reason that during his lifetime I transferred substantial assets to him which he used and which enabled him to die leaving a substantial estate for the benefit of his children, and it is now my judgment that the foregoing provisions for the benefit of my daughter or her children will in some measure be comparable to the benefits which my son and his children have received at my hands."

Irma Kramer died in 1980 and the will was admitted to probate in the Platte County Court. The plaintiffs filed claims in the estate based upon the agreement allegedly breached by the will. The claims were disallowed and rejected on November 4, 1980. This proceeding was commenced in the District Court for Platte County on December 8, 1980. The defendants filed general demurrers which were sustained upon the ground that the amended petition, including the exhibits attached, failed to state a cause of action for the reason that the agreement pleaded is too indefinite, ambiguous, and uncertain to entitle plaintiffs to any equitable relief. The plaintiffs elected to stand upon the amended petition, and the petition was dismissed.

Nebraska has long recognized a cause of action based on a contract to make a will. Strictly speaking, there cannot be a decree for the specific performance of a contract to make a will, since such an instrument is, by its nature, revocable by the promisor during his life and cannot be made by him after his death. It has long been recognized that courts of equity may grant relief in a form that is usually

equivalent to a decree of specific performance of a contract to leave property by will, after the death of the defaulting promisor, by fastening a trust upon his estate in the hands of those taking it with notice of such contract or by devise or descent. Jurisdiction in the equity court in such cases does not rest upon any distinction between real estate and personal property, but rather upon the ground of the inadequacy of an action at law. *Pflasterer v. Omaha Nat. Bank,* 201 Neb. 427, 268 N.W.2d 104 (1978); *Cox v. Johnston,* 139 Neb. 223, 296 N.W. 883 (1941).

A general demurrer tests the substantive legal rights of the parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded. If the petition states facts which entitle the plaintiff to relief, whether legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action. On reviewing the sustaining of a demurrer, this court must treat as undisputed the facts as alleged in the petition. *Cizek v. Cizek,* 201 Neb. 4, 266 N.W.2d 68 (1978).

In the present case the trial court found that the agreement was too indefinite, ambiguous, and uncertain to be specifically performed. In interpreting a written contract, the meaning of which is in doubt and dispute, the court, in order to determine its meaning, will consider all the facts and circumstances leading up to and attending its execution, and will consider the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. *Younker Brothers, Inc. v. Westroads, Inc.,* 196 Neb. 168, 241 N.W.2d 679 (1976).

The amended petition alleges that the family settlement agreement was intended by the parties to address and settle matters pertaining to the succession to Irma Kramer's estate upon her demise be-

tween the lines of Frederic Kramer and Katharine Douglas upon the basis of equal participation in said estate by said two family lines, following a prior distribution of $50,000 to the line of Katharine Douglas as equalization for lifetime gifts received by Frederic Kramer and confirmed to his estate under the settlement agreement. The decedent, Irma Kramer, signed the agreement and all directly interested parties in this lawsuit either signed the agreement or are bound by representative signatures. The general demurrers admit all facts and all reasonable inferences to be drawn from facts properly pleaded.

The action of the District Court in sustaining the general demurrers of the defendants and dismissing plaintiffs' amended petition was erroneous. The judgment of the District Court is reversed and the cause is remanded to the District Court for further proceedings.

REVERSED AND REMANDED
FOR FURTHER PROCEEDINGS.