Yvonne M. White, formerly known as Yvonne M.
Gubser, appellee, v. Jamison Patrick White
and Ryan Howard White, Copersonal
Representatives of the Estate of Leonard
P. White, deceased, appellants.

___ N.W.2d ___

Filed March 28, 2023.    No. A-22-024.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.

4. ____: ____. In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.

5. ____: ____. After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.

6. **Decedents' Estates: Claims: Time.** The requirements of Neb. Rev. Stat. § 30-2485 (Reissue 2016) are mandatory, and where a claim is not filed within the time provided in the statute, it is barred.

7. **Decedents' Estates.** The purpose of Neb. Rev. Stat. § 30-2485 (Reissue 2016) is to facilitate and expedite proceedings to distribute a decedent's estate, including an early appraisal of the respective rights of

interested persons, which include creditors, and prompt settlement of demands against the estate.

8. **Decedents' Estates: Claims: Notice.** Mere notice to a representative of an estate regarding a possible demand or claim against the estate does not constitute presenting or filing a claim under Neb. Rev. Stat. § 30-2486 (Reissue 2016).

9. **Antenuptial Agreements.** Premarital agreements are contracts made in contemplation of marriage.

10. **Contracts: Intent.** If a contract is unambiguous, the intent of the parties must be determined from the contents of the contract.

11. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.

12. **Appeal and Error.** In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

Perry A. Pirsch, of Pirsch Legal Services, P.C., L.L.O., for appellants.

Brent M. Kuhn and Haley L. Cannon, of Brent Kuhn Law, for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jamison Patrick White and Ryan Howard White, as copersonal representatives of the estate of Leonard P. White, appeal the order of the district court for Washington County, Nebraska, granting summary judgment in favor of Yvonne M. White, formerly known as Yvonne M. Gubser, based on its finding that Yvonne was entitled to the payment of $100,000 from Leonard's estate, pursuant to the terms of a premarital agreement between Yvonne and Leonard. Jamison and Ryan also appeal the district court's award of a camper to Yvonne based on its interpretation of the premarital agreement.

BACKGROUND

Yvonne and Leonard were married on October 14, 2016. On September 30, prior to the marriage, the parties executed a premarital agreement. The premarital agreement included provisions regarding ownership of property the parties purchased after the marriage, the parties' intent that each would have the right to dispose of her or his separate property without the other acquiring an interest in that property, and a nondiscretionary provision that if Leonard died before Yvonne, she would receive $100,000 from his estate.

Leonard died on October 19, 2018. On March 6, 2019, Leonard's two sons, Jamison and Ryan, filed an application for informal probate of Leonard's will and requested they be appointed copersonal representatives of the estate. Attached to this filing was a copy of Leonard's will, executed on November 10, 2006, which provided for a pourover to his living trust; a copy of the premarital agreement was also attached.

The application included statements that Yvonne and Leonard had been married at the time of Leonard's death and that the premarital agreement included a provision in which Yvonne and Leonard "retain[ed] all rights in and with respect to her or his own separate property" and had the absolute and unrestricted right to dispose of such property in any manner. The application stated that a separate section of the premarital agreement set forth provisions Leonard had made for Yvonne's benefit in the event he predeceased her. It acknowledged that "[t]he Premarital Agreement between Yvonne . . . and [Leonard] executed on September 30, 2016 was unrevoked and remained in force and effect as of [Leonard's] death." The first notice to creditors was published March 12, 2019, and it directed claims to be filed by May 13. On May 30, Jamison and Ryan filed an inventory, which showed there was no jointly owned property, and it listed a "2015 Cyclone 4000 Fifth Wheel Camper" (Camper) as property of the estate.

On September 27, 2019, Yvonne filed a complaint in district court against Jamison and Ryan in their capacity as

copersonal representatives of Leonard's estate, alleging that the estate was currently subject to probate and that the copersonal representatives had claimed the estate had ownership of the Camper; however, under the terms of the premarital agreement, Yvonne claimed she was the rightful owner of the Camper. She also alleged that pursuant to the premarital agreement, she was to receive $100,000 from Leonard's estate, but that Jamison and Ryan had failed, refused, and/or neglected to pay in accordance with the terms of the premarital agreement. Jamison and Ryan moved to dismiss Yvonne's complaint on the basis that any matter arising from the premarital agreement related to Leonard's estate and that pursuant to Neb. Rev. Stat. § 24-517(1) (Cum. Supp. 2022), the county court had exclusive original jurisdiction of all matters related to decedents' estates.

No order on the motion to dismiss appears in our record, but Jamison and Ryan subsequently filed an answer, alleging, as relevant to this appeal, that the premarital agreement did not provide for any camper to be distributed to Yvonne and that Yvonne did not make a timely claim under Neb. Rev. Stat. § 30-2314(3) (Reissue 2016); the answer also alleged that Yvonne failed to make a timely, valid claim in the estate proceedings to enforce the premarital agreement. They asserted the affirmative defenses of statute of limitations, laches, and partial satisfaction through the conversion of Leonard's personal property. In her reply, Yvonne alleged that at the time of the filing of the initial pleading for the estate proceedings, Jamison and Ryan had attached a copy of the premarital agreement and acknowledged its validity, which occurred during the claim-filing time period. She asserted that by doing so, they had made an admission as to the claims under the premarital agreement and were therefore precluded from denying them.

Both parties filed motions for summary judgment. Following a hearing, the district court found Jamison and Ryan had judicially admitted in the probate proceedings that the

premarital agreement was unrevoked and remained in full force and effect. It found that they had waived the necessity of Yvonne's filing a claim and that her claim was timely filed and not barred by any applicable statute of limitations. The district court rendered judgment for Yvonne in the amount of $100,000. But the district court found a genuine issue of material fact regarding the ownership of the Camper and denied the motion for summary judgment on that issue.

After a trial on the issue of the Camper ownership, the district court entered an order affirming its previous ruling as it related to the $100,000 payment; it also found that under the four corners of the premarital agreement, the Camper was a personal article that was deemed to be jointly owned, with full rights of survivorship. The district court found Yvonne should be distributed all right, title, and interest in and to the Camper. Jamison and Ryan timely appealed.

## ASSIGNMENTS OF ERROR

Jamison and Ryan assign, restated, that the district court erred in granting summary judgment in favor of Yvonne because she failed to comply with the time requirements of Neb. Rev. Stat. § 30-2485 (Reissue 2016) and that their application for informal probate did not relieve her from doing so. They also assign the court erred in awarding Yvonne the Camper.

## STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

[3] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion. *Kozal v. Snyder*, 312 Neb. 208, 978 N.W.2d 174 (2022).

[4,5] In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong. *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021). After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party. *Id*.

## ANALYSIS

Before addressing the assigned errors, we note that both parties proceeded in the district court under the assumption that Yvonne was asserting a claim, as that term is defined in Neb. Rev. Stat. § 30-2209(4) (Reissue 2016), and therefore, it was subject to the nonclaim statute, § 30-2485. Because the statute's applicability was not addressed in the district court, we assume, without deciding, that it was a claim subject to the nonclaim statute, and we proceed to the issues raised. See, *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d. 121 (2022) (appellate courts do not generally consider arguments and theories raised for first time on appeal); *State v. Conn*, 300 Neb. 391, 914 N.W.2d 440 (2018) (refusing to address on appeal applicability of statute not raised in trial court).

*Yvonne's Entitlement to $100,000 Payment.*

On appeal, Jamison and Ryan argue that the district court erred in granting summary judgment in favor of Yvonne because she failed to timely file a claim in the probate proceeding. Yvonne asserts that the copersonal representatives' acknowledgment of a valid premarital agreement in their verified application of informal probate constituted a judicial admission that relieved her of the obligation to file a claim.

The district court agreed with Yvonne's assertions, finding that Jamison and Ryan waived the necessity of Yvonne's filing of a claim, finding instead that Yvonne's claim was timely filed due to the copersonal representatives' judicial admission.

The premarital agreement provides, in part, that if Yvonne survives Leonard, "Yvonne shall receive One Hundred Thousand Dollars ($100,000.00) from [Leonard's] estate (and this provision shall be treated as a contract to make a Will as described in Neb. Rev. Stat. § 30-2351) . . . ." In consideration, the parties waived any claim in the other spouse's separate property. As stated above, the copersonal representatives attached a copy of the agreement to their application for informal probate and admitted that it "remained in force and effect" at the time of Leonard's death. After the copersonal representatives failed to distribute the $100,000 to Yvonne, she filed suit in the district court to recover under the premarital agreement.

Section 30-2485 requires that a claim against a decedent's estate which arises at or after the decedent's death be brought within 4 months after it arises. Yvonne did not file a claim in the probate proceeding, but argues that the copersonal representatives essentially filed the claim for her. She contends that their acts of attaching the premarital agreement to the application for informal probate and verifying that it was in force and effect was a judicial admission of her entitlement to receive its benefits.

[6,7] The requirements of § 30-2485 are mandatory, and where a claim is not filed within the time provided in the statute, it is barred. *In re Estate of Giventer*, 310 Neb. 39, 964 N.W.2d 234 (2021). See, also, *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021) (copy of promissory note, letter, and calculation of interest mailed to personal representative insufficient to constitute proper demand or presentation of claim). The purpose of § 30-2485 is to facilitate and expedite proceedings to distribute a decedent's estate, including an early appraisal of the respective rights of interested

persons, which include creditors, and prompt settlement of demands against the estate. See § 30-2209(21). As a result, the probate court or the personal representative can readily ascertain the nature and extent of a decedent's debts, determine whether any sale of property is necessary to satisfy the decedent's debts, and project a probable time at which the decedent's estate will be ready for distribution. *In re Estate of Giventer, supra*.

[8] *In re Estate of Giventer, supra*, does not preclude a determination that the copersonal representatives' actions satisfied the filing requirement. In *In re Estate of Giventer*, the court stated that mere notice to a representative of an estate regarding a possible demand or claim against the estate does not constitute presenting or filing a claim under Neb. Rev. Stat. § 30-2486 (Reissue 2016). But here, there was more than notice; there was the affirmative act by the copersonal representatives of filing in the probate proceeding a copy of the premarital agreement and an attestation that it remained in effect. The reason mere notice is insufficient is that "[i]f notice were accorded the stature of a claim, the resultant state of flux and uncertainty would frustrate and avoid the purpose and objectives of the nonclaim statute." *In re Estate of Feuerhelm*, 215 Neb. 872, 875, 341 N.W.2d 342, 345 (1983).

Given the facts of this case, we fail to see how the absence of a claim filed by Yvonne after the admissions made by the copersonal representatives created a state of flux or uncertainty. The copersonal representatives filed an application for informal probate in which they provided a copy of the premarital agreement which set forth the amount owed Yvonne and acknowledged that it remained in force and effect on the date of Leonard's death. This goes above and beyond notice of a potential claim; it was an acknowledgment of a valid claim held by Yvonne against the estate for $100,000. The district court did not err in its finding that Yvonne was entitled to a judgment of $100,000 against the copersonal representatives.

*Yvonne's Entitlement to Camper.*

[9-11] Jamison and Ryan also argue the district court erred in finding Yvonne and Leonard owned the Camper as a joint asset under the premarital agreement. Premarital agreements are contracts made in contemplation of marriage. *In re Estate of McConnell*, 28 Neb. App. 303, 943 N.W.2d 722 (2020). In interpreting contracts, the court as a matter of law must first determine whether the contract is ambiguous. *Id*. An instrument is ambiguous if a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id*. If a contract is unambiguous, the intent of the parties must be determined from the contents of the contract. *Id*. The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review. *Id*.

In support of their argument, Jamison and Ryan point to two sections of the premarital agreement that relate to the separate property that Yvonne and Leonard were bringing into the marriage. The two sections provided that Yvonne and Leonard retained all rights with respect to her or his separate property, were the sole owners of her or his separate property, and retained unlimited inter vivos and testamentary rights to it. Another section related to the intention not to have joint ownership of their separate property. Yvonne and Leonard each provided an exhibit to the premarital agreement listing their separate property. There were no vehicles itemized on either listing of separate property; the listings were financial accounts, life insurance policies, or real property.

Yvonne contends that the Camper falls under a different section of the premarital agreement, specifically the section related to personal and household articles. This section provides in part that for purposes of the agreement, "the term personal and household articles includes all articles of personal and household use . . . wherever located, such as, by way of illustration, . . . motor vehicles, boats, [and] sports equipment." The next section states that "[u]nless otherwise

specifically agreed to by the parties at the time of purchase, all personal and household articles later acquired by Yvonne and [Leonard] shall be deemed to be jointly owned, with full rights of survivorship."

We do not find the premarital agreement to be ambiguous. The premarital agreement provides that any personal property, such as motor vehicles, boats, and sports equipment, acquired after the marriage would be deemed jointly owned with full rights of survivorship, unless otherwise specifically agreed to by the parties. At trial, Yvonne testified that when she and Leonard married, he had a "Bighorn" camper (Bighorn), but that later, Leonard decided he wanted to get rid of or sell it. Leonard wanted to have the capability to carry his motorcycle without using a trailer behind the Bighorn, and he found a camper in Kansas; Yvonne was unable to go with him, so Leonard went to Kansas with the Bighorn. Leonard returned from Kansas with the Camper at issue in this appeal, having traded in the Bighorn for the Camper. Yvonne identified the title to the Camper, which listed Leonard as the owner. Yvonne testified that as far as she knew, Leonard purchased the Camper in full when he went to Kansas. She also confirmed that as far as she knew, there was no agreement between them at the time Leonard purchased the Camper that it would be his separate property under the premarital agreement, and that they never executed any document after the premarital agreement that said anything like that.

Yvonne established that the Camper was acquired after she and Leonard married and that there was no agreement that it would be Leonard's separate property. The Camper is similar to items Yvonne and Leonard identified in the premarital agreement as personal and household articles, like motor vehicles, boats, and sports equipment. Yvonne established that under the terms of the premarital agreement, she and Leonard jointly owned the Camper with full rights of survivorship. The district court did not err in determining she should be awarded the right, title, and interest in the Camper.

Jamison and Ryan argue that to prevent unjust enrichment, even if the district court did not err in awarding Yvonne the Camper, the district court did err in failing to order her to reimburse them for the amounts incurred as storage fees for the Camper, the insurance paid, and the payoff of the home equity loan Leonard used to finance the Camper, for a total of $36,578. However, on appeal, Jamison and Ryan assigned that the district court "committed reversible error in awarding a camper titled in [Leonard's] name to [Yvonne] pursuant to its interpretation of a prenuptial agreement that established the camper as [Leonard's] separate property as a matter of law."

[12] Jamison and Ryan assigned that the district court erred in awarding Yvonne the Camper based on its interpretation of the premarital agreement. They did not assign that the district court erred in failing to order Yvonne to reimburse them for expenses related to the Camper. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Scalise v. Davis*, 312 Neb. 518, 980 N.W.2d 27 (2022). We will not address this argued, but unassigned, alleged error.

## CONCLUSION

We find the district court did not err in awarding Yvonne a judgment of $100,000 against Jamison and Ryan as copersonal representatives of Leonard's estate, nor did it err in awarding Yvonne the Camper. We affirm the judgment of the district court.

Affirmed.

Bishop, Judge, concurring.

I concur with the majority's decision to affirm the district court's awards to Yvonne.

I write separately because I am not persuaded that attaching the premarital agreement to the copersonal representatives' application for informal probate and their acknowledgment that the premarital agreement was unrevoked and remained

in full force and effect at the time of Leonard's death satisfied the filing requirement for a claim under the nonclaim statute, Neb. Rev. Stat. § 30-2485 (Reissue 2016). See, *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021) (judicial admissions must be deliberate, clear, and unequivocal; administrator cannot waive defense of nonclaim to prejudice of estate); *In re Estate of Giventer*, 310 Neb. 39, 56, 964 N.W.2d 234, 245-46 (2021) ("mere notice to a representative of an estate regarding a possible demand or claim against the estate does not constitute presenting or filing a claim under § 30-2486"); *In re Estate of Feuerhelm*, 215 Neb. 872, 875, 341 N.W.2d 342, 344 (1983) (emphasis in original) (mere notice to representative of estate regarding possible demand or claim against estate does not constitute presenting or filing claim under Neb. Rev. Stat. § 30-2486 (Reissue 2016); implicit in language of § 30-2486, which states that "'[t]he *claimant* may file a written *statement of the claim*,'" is the "requirement that the creditor to whom the decedent is obligated is the claimant who can present a demand against the estate"). In my opinion, the copersonal representatives' acknowledgment that the premarital agreement was unrevoked and remained in full force and effect served only to give interested parties notice of its existence and validity, nothing more.

That said, I am also not persuaded that the nonclaim statute, § 30-2485, applies to the underlying proceedings.

At the onset of the analysis in the majority opinion, it assumes, without deciding, that Yvonne was asserting a claim subject to the nonclaim statute, § 30-2485, because the parties proceeded in the district court under that assumption and the statute's applicability was not addressed in the district court. However, even though not raised, the issue of whether § 30-2485 should have applied to Yvonne's action presents a question of law, which an appellate court has an obligation to reach independently, irrespective of the decision made by the trial court. See *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020). In my opinion, Yvonne was a beneficiary of

Leonard's estate under the terms of the premarital agreement, which specifically expressed Yvonne's and Leonard's intent that certain provisions be treated as a contract to make a will; Yvonne was not a creditor, so her action to obtain certain assets under the premarital agreement did not constitute a claim against the estate, thus making the time limitations to file a claim set forth in § 30-2485 inapplicable.

Neb. Rev. Stat. § 30-2209 (Reissue 2016) sets forth general definitions for the Nebraska Probate Code and, as relevant here, provides:

> (4) Claim, in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. The term does not include estate or inheritance taxes, demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate.

A claim includes liabilities of the decedent and liabilities of the estate; a beneficiary's entitlement to a decedent's assets pursuant to a will or a contract to make a will is not a liability of the decedent or the estate, and any action seeking a right of distribution under such circumstances is therefore not a claim subject to the nonclaim statute. "'"A claim for specific property in the hands of the [executor] is deemed to be a claim 'against the [executor]' but not 'against the estate'; for such property, though in the hands of the [executor], is not part of the estate and the claim for it is not a 'debt' of the estate."'" *Saradjian v. Saradjian*, 25 Conn. App. 411, 418, 595 A.2d 890, 894 (1991). "As such, a claim for the recovery of specific property is not within the statute of nonclaim." *Id*.

Yvonne was entitled to receive $100,000 pursuant to the terms of the premarital agreement. Article 4, section 4.2, of the premarital agreement provides in part that "[i]n the event

of [Leonard's] death, and if Yvonne survives him: (a) Yvonne shall receive One Hundred Thousand Dollars ($100,000) from [Leonard's] estate (and this provision shall be treated as a contract to make a Will as described in Neb. Rev. Stat. § 30-2351)." Neb. Rev. Stat. § 30-2351 (Reissue 2016) provides three ways that a contract to make a will or devise, if executed after January 1, 1977, can be established. As relevant here, it can be established by "a writing signed by the decedent evidencing the contract." § 30-2351(3). The premarital agreement is a writing signed by Leonard evidencing the contract, and this meets the requirement of § 30-2351 for a valid contract to make a will.

As to contracts to make a will, the Nebraska Supreme Court has stated that "[t]he effect of a valid contract for wills is not to create a cause of action against the decedent's estate, but instead to create a cause of action for breach of contract." *In re Estate of Stuchlik*, 289 Neb. 673, 684-85, 857 N.W.2d 57, 67 (2014), *opinion modified on denial of rehearing*, 290 Neb. 392, 861 N.W.2d 682 (2015). In *In re Estate of Stuchlik*, the Nebraska Supreme Court cited to *Pruss v. Pruss*, 245 Neb. 521, 514 N.W.2d 335 (1994), which involved two spouses entering into an agreement pursuant to § 30-2351 not to change their wills. After the husband died, the wife rewrote her will. *Pruss, supra*. The beneficiaries who were affected by the change filed an action in the district court seeking a constructive trust on the wife's estate pursuant to the terms of the original will. *Id*. The court granted that relief and ordered a constructive trust be imposed on her estate pursuant to the terms of the original will. *Id*. Prior to *Pruss*, the Nebraska Supreme Court stated:

Nebraska has long recognized a cause of action based on a contract to make a will. Strictly speaking, there cannot be a decree for the specific performance of a contract to make a will, since such an instrument is, by its nature, revocable by the promisor during his life and cannot be made by him after his death. It has long been

recognized that courts of equity may grant relief in a form that is usually equivalent to a decree of specific performance of a contract to leave property by will, after the death of the defaulting promisor, by fastening a trust upon his estate in the hands of those taking it with notice of such contract or by devise or descent.

*Philp v. First Nat. Bank & Trust Co.*, 212 Neb. 791, 796-97, 326 N.W.2d 48, 51-52 (1982). See, also, *In re Estate of Welch*, 167 Kan. 97, 204 P.2d 714 (1949) (marriage contract determines only which of heirs will receive assets of estate and does not constitute claim or demand against the estate).

Accordingly, Yvonne's action seeking the $100,000 payment from Leonard's estate pursuant to the terms of the premarital agreement was for breach of contract and was not a "claim" as that term is defined by § 30-2209(4). She did not need to file a claim against the estate, and her failure to do so does not bar her from receiving the payment provided for in the premarital agreement, which the copersonal representatives acknowledged was unrevoked and remained in full force and effect as of Leonard's death.

Also, Yvonne's action regarding the Camper likewise does not constitute a claim subject to the nonclaim statute, because it involves a dispute "regarding title of a decedent . . . to specific assets alleged to be included in the estate." § 30-2209(4). The Nebraska Supreme Court has held that an action involving a dispute regarding title of property allegedly belonging to a decedent and included in the decedent's estate is not a claim. See *In re Estate of Severns*, 217 Neb. 803, 805, 352 N.W.2d 865, 868 (1984) (document entitled "'STATEMENT OF CLAIM'" asserted grandfather's clock shown as asset of decedent's estate belonged to claimant; referring to the definition of claim found in § 30-2209(4), court stated, "It is clear beyond question that the action here involved a dispute regarding title of property allegedly belonging to the decedent and included in her estate, and was not a claim"). See, also, *Eggers v. Rittscher*, 247 Neb. 648, 653, 529 N.W.2d

741, 744 (1995) (plaintiff's action raised dispute as to decedent's title based on oral contract to convey parcel of land and was not claim as defined by § 30-2209(4) and was therefore not barred by nonclaim statute; "we read § 30-2209(4) to exempt from the definition of 'claims' disputes regarding equitable title"). Accordingly, the issue of ownership of the Camper under the terms of the premarital agreement raised a dispute as to title of that specific asset, thus excluding it as a claim as defined under § 30-2209(4). I agree with the majority's analysis supporting the district court's award of the Camper to Yvonne.